2021 IL App (1st) 200112

No. 1-20-0112

Second Division
December 7, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 13 CR 19027 |
| v. | ) | |
| | ) | |
| ANDRE HILLIARD, | ) | Honorable |
| | ) | Vincent Michael Gaughan |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices Howse and Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant-appellant Andre Hilliard was found guilty of attempted murder and aggravated battery with a firearm and sentenced to 15 years in prison plus a mandatory 25-year firearm enhancement, for a total of 40 years' imprisonment. He now appeals from the judgment of the trial court summarily dismissing his *pro se* petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, he argues that the trial court erred because his petition stated an arguable basis in fact or law where he was 18

years old at the time of the offense and the trial court was unable to consider his youth and attendant characteristics before imposing the mandatory firearm enhancement. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On September 19, 2013, defendant was arrested and charged with attempted murder and aggravated battery with a firearm in connection with the shooting of Devaul Killingsworth in the early hours of August 6, 2013. As relevant to this appeal, the facts adduced at trial are as follows.

¶ 4     At the start of trial, the trial judge stated on the record that defendant was removed from the courtroom because he had threatened people, became belligerent, and started screaming. Instead of shackling and handcuffing defendant, the judge opted to place defendant in a lockup with a microphone placed inside to ensure that defendant could hear the trial proceedings. Defendant was informed that, at any point, he could decide that he wanted to be present in the courtroom.

¶ 5     Killingsworth testified that just before midnight on August 5, 2013, he was visiting Tracy Chatman, the mother of his grandchildren, at the Altgeld Gardens housing complex, located on 132nd Street in Chicago. At around 12:45 a.m., he was standing outside of Chatman's door talking to the neighbors. As he was about to reenter Chatman's home, he heard a noise, turned around, and saw defendant, whom he believed to be Chatman's boyfriend at the time, pointing a gun at him. Defendant, from one or two feet away, fired two to five gunshots at him. Killingsworth was struck in the arm by two bullets as he raised his arm to protect himself. He then ran a few feet into a grassy area and fell down before walking back to Chatman's door. A neighbor came out with a chair for him and told him he had been shot. Eventually, an ambulance arrived and took Killingsworth to the hospital. He had surgery on his arm to remove the bullet and fragments, but

not all could be removed. He testified that he is still unable to use his arm to the same extent as before the shooting. While he was at the hospital, he informed detectives that defendant shot him. From a photograph array, Killingsworth identified defendant. After defendant was arrested, Killingsworth identified him as the shooter from a physical lineup.

¶ 6    Chicago police detective Brian Cunningham testified that on August 6, 2013, he and his partner, Chicago police detective Bryant Casey, were assigned to investigate a shooting at Altgeld Gardens. Cunningham first went to the hospital to assess the status of the victim, Killingsworth. Killingsworth told Cunningham that the shooter was someone named "Andre." Killingsworth identified defendant as the shooter from a photo array. Defendant was arrested on September 19, 2013.

¶ 7    Dr. Tobin Efferen, an attending physician at Mount Sinai Medical Center, testified that he was working on August 6, 2013, when Killingsworth was transferred to Mount Sinai from Roseland Hospital. He testified that Dr. Mason Milburn was also involved in Killingsworth's care at the hospital as the orthopedic surgeon. A review of Killingsworth's X-rays showed that he had broken bones in his left forearm, which required surgery. Dr. Efferen did not see Killingsworth again after surgery, but based on the medical records, he stated that the surgery was successful.

¶ 8    Defendant's motion for a directed verdict as to attempted first degree murder was denied. At this time, defendant was once again asked if he wanted to participate in the trial, which he refused. The defense rested without presenting evidence.

¶ 9    The jury found defendant guilty of attempted first degree murder and aggravated battery with a firearm. The jury also found that, during the commission of the attempted murder, defendant personally discharged a firearm that caused great bodily harm to another person.

¶ 10    After the jury returned the verdict, the trial court requested that Forensic Clinical Services examine defendant's fitness in light of defendant's behavior during the trial. Dr. Nishad Nadkarni interviewed defendant three separate times but ultimately could not render an opinion because defendant refused to cooperate. However, Dr. Nadkarni did opine that he believed defendant was malingering some psychotic symptoms and that he did not have any cognitive impairments or mental illnesses that prevented him from understanding the charges and participating in the trial as necessary. In coming to this conclusion, Dr. Nadkarni had reviewed defendant's records including reports from 2009 at Hargrove Hospital, where defendant was hospitalized briefly for severe behavioral disorder, conduct disorder, aggression, and a history of drug abuse and gang involvement, though these reports did not contain a diagnosis of any major mental illness or cognitive impairment. After the fitness hearing, the trial court found defendant to be fit for posttrial motions and sentencing.

¶ 11    A presentencing investigation report (PSI) was prepared prior to the sentencing hearing, though the probation officer reported that he had difficulty interviewing defendant because defendant refused to participate. The report disclosed that defendant's parents were never married and he did not have a relationship with his father. Defendant only attended school until the fifth grade, and he stated that he suffered from a mental illness.

¶ 12    At the sentencing hearing, neither party introduced any evidence in aggravation or mitigation. The State requested a sentence above the minimum based on evidence that Killingsworth was permanently disabled. Defense counsel noted that defendant was 19 years old at the time of sentencing and had no criminal history. In sentencing defendant, the court merged the offense of aggravated battery with a firearm into the attempted murder count. The court then sentenced defendant to 15 years for attempted murder and the minimum sentence of 25 years for

personally discharging a firearm that proximately caused bodily harm to a person, after considering "the statutory provisions in aggravation, the statutory provisions in mitigation \*\*\* and also [the] evidence presented at the aggravation and \*\*\* mitigation phase of the sentencing and pre-sentencing investigation." The court did not make any specific statements regarding the statutory factors or any of the evidence presented at the hearing or in the PSI.

¶ 13   On direct appeal, defendant argued, *inter alia*, that the mandatory firearm enhancement was unconstitutional as applied to him in light of his young age at the time of the offense. *People v. Hilliard*, 2017 IL App (1st) 142951-U. This court affirmed defendant's conviction and sentence and, in relation to his constitutional claim, took no position and stated that it was "best suited" for the trial court where the factual record could be developed as necessary. *Id.* ¶ 42. This court denied the petition for rehearing on August 4, 2017, and our supreme court denied defendant's petition for leave to appeal on November 28, 2018.

¶ 14   On September 19, 2019, defendant filed his initial *pro se* postconviction petition, alleging that the mandatory 25-year firearm enhancement was unconstitutional as applied to him under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). He further asserts that the trial court should have explicitly applied the factors espoused in *Miller v. Alabama*, 567 U.S. 460, 479 (2012), because his cognitive impairments rendered him more similar to a 16- or 17-year-old at the time of the offense and the trial court was unable to consider his youth, rehabilitative potential, lack of criminal history, and lack of gang involvement prior to imposing the firearm enhancement.

¶ 15   On December 5, 2019, the trial court issued a written order summarily dismissing the petition. This appeal followed.

¶ 16                                   II. ANALYSIS

¶ 17    On appeal, defendant asserts that he has stated the gist of an arguable constitutional claim that the mandatory 25-year firearm enhancement as applied to him violates the proportionate penalties clause of the Illinois Constitution and thus this court should reverse and remand for second stage proceedings under the Act. Specifically, he alleges that he was only 18 years old at the time of the offense and the court was unable to consider his youth and other related factors, including his childhood, lack of education, and lack of gang membership, when adding the enhancement to his sentence.

¶ 18    The Act provides a method for a defendant to collaterally attack a conviction by asserting that it resulted from a "substantial denial" of his constitutional rights. 725 ILCS 5/122-1 (West 2018); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A postconviction proceeding in a noncapital case has three stages. *Hodges*, 234 Ill. 2d at 10. At the first stage, a petition need only state the "gist" of a constitutional claim (*id.* at 9), and a trial court may summarily dismiss a postconviction petition within 90 days if it "determines the petition is frivolous or is patently without merit" (725 ILCS 5/122-2.1(a)(2) (West 2018)).

¶ 19    A petition is frivolous or patently without merit when it has no arguable basis in either fact or law. *Hodges*, 234 Ill. 2d at 11-12. A petition has no arguable basis in law or fact where it is "based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. Additionally, a defendant's claim is considered frivolous or patently without merit if it is procedurally barred under either the doctrine of *res judicata* or forfeiture. *People v. Blair*, 215 Ill. 2d 427, 445 (2005). Although a defendant's petition is to be liberally construed and need only present a limited amount of detail, that "does not mean that a *pro se* [defendant] is excused from providing any factual detail at all surrounding the alleged constitutional deprivation." *People v.*

*Delton*, 227 Ill. 2d 247, 254 (2008). We review *de novo* the summary dismissal of a defendant's postconviction petition. *People v. Allen*, 2015 IL 113135, ¶ 19.

¶ 20    As an initial matter, we note that defendant did include a constitutional claim under the proportionate penalties clause on direct appeal. However, at that time, this court did not consider that claim, as we found that it was better pursued in a postconviction petition as our supreme court directed in *People v. Thompson*, 2015 IL 118151, and *People v. Harris*, 2018 IL 121932 (both discussed in greater detail below). For that reason, there is no issue of forfeiture or *res judicata* regarding the instant petition.

¶ 21    Defendant's as-applied constitutional challenge is rooted in a line of cases providing heightened protections for juvenile defendants in sentencing under the eighth amendment of the United States Constitution, which prohibits cruel and unusual punishment. See *Roper v. Simmons*, 543 U.S. 551, 574-75 (2005) (eighth amendment prohibits the death penalty for juveniles who commit murder); *Graham v. Florida*, 560 U.S. 48, 82 (2010) (eighth amendment prohibits mandatory life sentences without parole for juveniles who commit nonhomicide offense); *Miller*, 567 U.S. at 479 (eighth amendment prohibits mandatory life without parole sentences for juvenile offenders convicted of homicide). Specifically, the rationale for the holding in *Miller*, the preeminent case, was that "children are constitutionally different from adults for purposes of sentencing," as they are less mature and more impulsive and vulnerable to peer pressure than adults. *Id*. at 471-74. Clear from this trilogy of cases is that the Court was concerned with the most severe forms of punishment allowed under the Constitution, the death penalty and life without parole.

¶ 22    The Illinois Supreme Court has expanded the *Miller* protections beyond the context of mandatory life sentences to now include juvenile offenders who receive *de facto* life sentences

(*People v. Reyes*, 2016 IL 119271, ¶ 9), which the court later defined as a prison term of *more than* 40 years (*People v. Buffer*, 2019 IL 122327, ¶ 40).[1] Subsequently, in *People v. Holman*, 2017 IL 120655, ¶ 40, our supreme court extended the protections of *Miller*, holding that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." Thus, a juvenile defendant may be sentenced to life imprisonment without parole only if the trial court first determines that the juvenile defendant's conduct demonstrated "irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation."[2] *Id.* ¶ 46. Such a determination should be made after the trial court has considered the *Miller* factors, which include but are not limited to the juvenile defendant's (1) chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) family and home environment; (3) degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) incompetence, including his inability to deal with police officers or prosecutors and his

---

[1] Recently, in *People v. Dorsey*, 2020 IL 123010, ¶ 49, our supreme court considered the relevance of good-conduct credit in determining whether a 76-year sentence constitutes a *de facto* life sentence as prescribed by the court in *Buffer*. The court held that, because the defendant, who was 14 years old at the time of the offense, could reduce his 76-year sentence to 38 years through good-time credit, the sentence did not offend *Buffer's* 40-year mark. *Id.* ¶ 65. In so doing, the court implicitly reaffirmed that 40 years is the line of demarcation for *de facto* life sentences.

[2] We are aware of the United States Supreme Court's recent decision in *Jones v. Mississippi*, ___ U.S. ___, ___, 141 S. Ct. 1307, 1318-19 (2021), holding that sentencing courts are not constitutionally mandated under the eighth amendment to make a finding of "permanent incorrigibility" before sentencing a juvenile defendant to life without parole. The Court also expressly stated, however, that states are not precluded from imposing any sentencing mechanisms they see fit in cases involving juvenile defendants convicted of murder, such as requiring extra factual findings, prohibiting sentences of life without parole for juveniles, or permitting appellate review based in proportionality for life-without-parole sentences. *Id.* at ___, 141 S. Ct. at 1323. As of the issuance of this decision, our supreme court has addressed *Jones* only in passing, suggesting that the holding of *Holman* in light of *Jones* is "questionable." *Dorsey*, 2021 IL 123010, ¶ 41. Unless and until explicit direction is given in light of *Jones*, we are constrained to follow our current supreme court precedent.

incapacity to assist his own attorneys; and (5) prospects for rehabilitation. *Id.* (citing *Miller*, 567 U.S. at 477-78).

¶ 23    Defendant acknowledges that he does not have a viable eighth amendment claim under *Miller* because he was 18 years old at the time of the offense. See *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 49 ("It is well established that offenders who are 18 years and older cannot raise a facial challenge to their sentences under the eighth amendment and the *Miller* line of cases."). He instead couches his claim as a violation of the proportionate penalties clause of the Illinois Constitution.

¶ 24    The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. We have held that this clause provides greater protections against excessive punishment than does the eighth amendment. *People v. Fernandez*, 2014 IL App (1st) 120508, ¶ 63; *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 35; see also *People v. Clemons*, 2012 IL 107821, ¶ 40 (the proportionate-penalties clause "which focuses on the objective of rehabilitation, went beyond the framers' understanding of the eighth amendment and is not synonymous with that provision"). But see *People v. Patterson*, 2014 IL 115102, ¶ 106 (stating that the proportionate penalties clause is "co-extensive with the eighth amendment's cruel and unusual punishment clause"). For more than a century, we have held that, where a defendant's sentence is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community, it violates the proportionate penalties clause*. People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 421-22 (1894). The clause requires balancing the goals of retribution and rehabilitation, which necessitates a careful consideration of all the factors in aggravation and mitigation. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). We may

determine whether a sentence shocks the moral sense of the community by considering both objective evidence and the community's changing standard of moral decency. *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008).

¶ 25    In two cases on direct appeal, our supreme court has recognized that young adults (those between 18 and 21 years old) may rely on the evolving neuroscience regarding brain development in juveniles and its correlation to maturity underpinning the *Miller* decision in support of an as-applied challenge pursuant to the proportionate penalties clause of the Illinois Constitution. See *Thompson*, 2015 IL 118151, ¶¶ 43-44 (19-year-old defendant sentenced to a term of natural life in prison); *Harris*, 2018 IL 121932, ¶ 48 (defendant, aged 18 years and 3 months, sentenced to 76 years in prison). In *Thompson* and *Harris*, the court opened the door for young adult defendants to demonstrate that their own specific characteristics and circumstances were so like those of a juvenile that imposition of a life sentence, absent the necessary considerations established in *Miller*, would violate the proportionate penalties clause. The court instructed, however, that such claims would best be pursued through postconviction proceedings, as defendant seeks to do here. See *Thompson*, 2015 IL 118151, ¶¶ 43-44; *Harris*, 2018 IL 121932, ¶ 48. Clear from *Thompson* and *Harris* is the viability of *Miller* based claims in postconviction proceedings. Equally clear from *Miller* and its progeny is that such claims must satisfy two initial threshold requirements: the defendant must be (1) either a minor or young adult offender and (2) sentenced to a natural or *de facto* life sentence. *Miller*, 567 U.S. at 479; *Buffer*, 2019 IL 122327, ¶ 27; *Thompson*, 2015 IL 118151, ¶¶ 43-44; *Harris*, 2018 IL 121932, ¶ 48.

¶ 26    Defendant argues that "the proportionate penalties clause may be violated when an emerging adult *** either receives a *de facto* life sentence or *suffers a mandatory adult sentencing penalty*, without the trial court having properly considered the youth of the offender." (Emphasis

added.) Defendant acknowledges that he did not receive a *de facto* life sentence as defined in *Buffer.* He maintains, however, that for purposes of a proportionate penalties claim, whether the sentence is *de facto* life is not a factor. He argues that the proper focus is on the absence of sentencing discretion. At oral argument, defendant entreated this court to "extend" the *Miller* protections, notwithstanding that his sentence was less than *de facto* life, because imposition of mandatory enhancement, without due consideration given to his youth and the attendant characteristics, shocks the moral conscience of the community.

¶ 27    The State seeks to defeat defendant's claim by characterizing his aggregate 40-year sentence as "discretionary," the inference to be drawn being that the court considered any relevant factors. We reject the State's characterization out of hand. Defendant's sentence is clearly composed of two statutorily authorized components. The court's imposition of the mandatory firearm enhancement was done without the exercise of any discretion by the court. To suggest otherwise is simply disingenuous.

¶ 28    To support his claim that a *de facto* life sentence is not required for *Miller* protections to apply, defendant invites our attention to cases decided here in the First District, *People v. Aikens*, 2016 IL App (1st) 133578, and *People v. Ruiz*, 2020 IL App (1st) 163145, as well as to cases from our sister districts, *People v. Barnes*, 2018 IL App (5th) 140378, and *People v. Womack*, 2020 IL App (3d) 170208. Subsequent to the close of briefing, the parties moved for and were granted leave to cite additional authority in support of their respective positions. Specifically, defendant additionally cites our supreme court's recent decision in *People v. House*, 2021 IL 125124, and the State cites *People v. Woods*, 2020 IL App (1st) 163031, and *People v. Nichols*, 2021 IL App (2d) 190659. We will address the additionally cited authorities as we deem relevant or necessary to our analysis and disposition of this appeal. We hasten to add that we are not bound by the

decisions of other districts, divisions, or even different panels of our division of the appellate court (*O'Casek v. Children*'s *Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008)). Even so, we may consider decisions of our sister districts, as well as different divisions of our court, as instructive.

¶ 29    Decisional law following *Miller* continues to evolve. *Miller* itself has become so ingrained in our jurisprudence that mention of the case name alone induces a ready recall of both the procedural and substantive rules borne out of that decision. Given defendant's suggested "novel" approach to resolving the issue before us and notwithstanding our familiarity, a more detailed summary of *Miller* and its holding serves best to explain our disposition here. In *Miller*, the Court considered appeals by "two 14-year-old offenders *** convicted of murder and sentenced to life imprisonment without the possibility of parole. In neither case did the sentencing authority have any discretion to impose a different punishment." *Miller*, 567 U.S. at 465. Recalling its earlier decisions in *Roper* and *Graham*, the *Miller* court noted the difference between children and adults for purposes of sentencing decisions and that, "in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult." *Id.* at 477. The Court explained that a mandatory sentence precludes consideration of, *inter alia*, the juvenile offender's age and its attendant characteristics. *Id.* The Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " *Id.* at 465. Accordingly, "a judge or jury must have the opportunity

to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 489.[3]

¶ 30    Subsequent to the decision in *Miller*, the high court in *Montgomery v. Louisiana* clarified that *Miller* established both a substantive and a procedural requirement. 577 U.S. 190, 136 S. Ct. 718 (2016). *Montgomery* explained that, pursuant to *Miller*, sentencing a child to life without parole is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption. *Id.* at ___, 136 S. Ct. at 195 (citing *Miller* 567 U.S. at 479, and *Roper*, 543 U.S. at 573). *Miller* rendered life without parole an unconstitutional penalty for a particular class of juvenile defendants whose criminal acts reflect the transient immaturity of youth. *Id.* at ___, 136 S. Ct. at 734. "As a result, *Miller* announced a substantive rule of constitutional law." *Id.* at ___, 136 S. Ct. at 734. *Miller*'s procedural component "requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." *Id.* at ___, 136 S. Ct. at 734.

¶ 31    Here, defendant seeks to divorce *Miller*'s procedural requirement (consideration of the juvenile offender's age and its attendant characteristics) from its substantive rule (mandatory life without parole for juveniles violates the eighth amendment) and require a hearing notwithstanding the absence of a *de facto* life sentence. Nothing in *Miller* can be read to suggest simply that mandatory sentences imposed on juvenile offenders violate the eighth amendment. Nor does such a suggestion arise from a reading of either *Thompson* or *Harris*. To accept defendant's suggested "novel" application of *Miller* would require us to extract the substantive rule of *Miller* from its

---

[3] As stated previously, our supreme court in *Reyes* extended the holding in *Miller* to include mandatory *de facto* life sentences (2016 IL 119271, ¶¶ 28-34), later quantified in *Buffer* as a sentence greater than 40 years (2019 IL 122327, ¶ 40).

holding and apply only the supporting procedural requirement. To do so would additionally require that we overlook the holdings in *Thompson* and *Harris*, which rely not only upon *Miller*'s procedural requirement but, more significantly, upon the substantive rule of constitutional law in extending protections to emerging adults. To parse out select portions of *Miller*'s holding would mean that we give *Miller*, at least as we know it, no constitutional law effect. The procedural rule in *Miller* does not replace, but rather gives effect to, *Miller*'s substantive holding. *Id.* at ___, 136 S. Ct. 735. Accordingly, we decline defendant's invitation to extend *Miller* to sentences of less than natural or *de facto* life imprisonment.

¶ 32    Although we believe *Miller* and *Buffer are* controlling, we will nonetheless address the holdings in *Aikens* and other cases relied upon by defendant in support of his claim. In *Aikens*, the defendant, who was 17 years old at the time of the offense, was sentenced to an aggregate prison term of 40 years, which included a mandatory 20-year firearm enhancement. 2016 IL App (1st) 133578, ¶ 1. On direct appeal, the defendant raised both facial and as-applied challenges to various of Illinois's mandatory sentencing schemes under both the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. The defendant argued that the mandatory nature of particular sentencing schemes divested the court of any individualized determinations, as proscribed by *Roper*, *Graham*, and *Miller*. *Id.* ¶ 30. In rejecting the defendant's facial claims, the court noted that in *Miller* the Court stated that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for a juvenile. *Id.* ¶ 31.

¶ 33    The court applied a different analysis in deciding the defendant's as-applied challenge to the mandatory firearm enhancement provision. Relying on our supreme court's decision in *People v. Miller* (*Leon Miller*), 202 Ill. 2d 328, 338 (2002), and this court's decision in *People v. Gipson*,

2015 IL App (1st) 122451, the court found that the challenged sentencing scheme, as applied to the defendant, shocked the evolving standard of moral decency and thus violated the proportionate penalties clause. *Aikens*, 2016 IL App (1st) 133578, ¶ 37. In particular, this court noted that the defendant had no prior criminal history and had a troubling background and that the trial court specifically noted that he lacked discretion and the sentence seemed " 'to be an unimaginable amount of time especially for a teenage child.' " *Id.* Noting the evolving standards for juvenile offenders in Illinois, as evidenced by recent legislative enactments, the court expressed that the legislation was indicative of a changing moral compass in our society as it related to trying and sentencing juveniles as adults. *Id.* ¶ 38. Following the lead in *Gipson*, the court reversed the defendant's sentence and remanded for resentencing, without imposition of the mandatory enhancement. *Id.*

¶ 34 We disagree with *Aikens*, which incidentally, like *Leon Miller* and *Gipson*, was decided before *Buffer* and thus without knowledge of *Buffer*'s 40-year demarcation for *de facto* life sentences. Further, we believe that *Miller*'s "harshest possible penalty" proscription, which the *Aikens* court relied upon in rejecting the defendant's facial challenges, was equally applicable to defeat his as-applied challenges. *Buffer* aside, clearly, the defendant's 40-year sentence was not *Miller*'s "life imprisonment without the possibility of parole."

¶ 35 We note in passing that *Gipson*, which was limited to its particular facts, bears little similarity to *Aikens*. There, the defendant was 15 years of age at the time of the charged offense. *Gipson*, 2015 IL App (1st) 122451, ¶ 4. The record revealed the defendant's mental health, before commission of the offense, was questionable. *Id.* ¶¶ 5-15. Yet, in imposing the mandatory firearm enhancement, the court had no discretion to consider the defendant's individual characteristics. *Id.* ¶¶ 23-24. The defendant was sentenced to an aggregate of 52 years in prison, which, we note,

would qualify under *Buffer* as a *de facto* life sentence, implicating both the eighth amendment and the proportionate penalties clause. *Id.*

¶ 36    Defendant argues that, even short of actually finding a statute unconstitutional as applied to an emerging adult, our court has repeatedly found that, under the proportionate penalties clause, an emerging adult who either received a "*de facto* life sentence or suffered mandatory application of a severe adult statute without consideration of his youth can at least proceed to the second stage of post-conviction proceedings." At the second stage, defendant can then argue, with the assistance of counsel, "why the fact their youth was not properly considered at sentencing renders their sentence unconstitutional."

¶ 37    In support of this argument, defendant cites *People v. Ruiz*, 2020 IL App (1st) 163145. In *Ruiz*, the defendant, who was 18 years old at the time of the offense, was found guilty of first degree murder and aggravated discharge of a firearm and sentenced to 40 years' imprisonment, which included a concurrent 15-year mandatory firearm enhancement. *Id.* ¶¶ 1, 16, 18. In seeking leave to file his successive postconviction petition, the defendant challenged his "40-year discretionary sentence" as unconstitutional under the proportionate penalties clause because the trial court failed to consider his age during sentencing. *Id.* ¶ 28. Over strong dissent, this court reversed the trial court's denial of leave to file the petition and remanded for further proceedings to permit the defendant, originally sentenced to 40 years, an opportunity to develop the factual basis in support of his *Miller* claim. *Id.* ¶ 2. Specifically, the *Ruiz* majority held that the defendant stated a claim that, as a matter of law, the successive postconviction requirement of "prejudice has been caused by reason of [his] justified failure to raise a constitutional challenge to his sentence in his initial postconviction petition." *Id.* ¶ 53. The dissent pointed out that, as the defendant's 40-year sentence was not a *de facto* life sentence, *Miller* protections did not apply. *Id.* ¶ 77 (Pierce, J.,

dissenting). The dissent stated that, because there was no authority to extend to an adult protection not available to any juvenile that did not receive a *de facto* life sentence, the petitioner's *Miller* claims should be dismissed. *Id.*

¶ 38     We decline to follow *Ruiz*. Instead, we agree with the dissent that, because defendant's 40-year sentence did not equate to a *de facto* life sentence, it did not qualify for *Miller* type protections. See *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 35 (disagreeing with *Ruiz* and noting that the defendant in that case "did not even receive a *de facto* life sentence"). Additionally, as the dissent makes clear, given the length of the sentence, even had the defendant been a juvenile, he would not have been entitled to *Miller*-type protections.

¶ 39     Further, the majority in *Ruiz* determined that a 40-year sentence would result in a 15-year-old defendant being released at age 55 and an 18-year-old defendant being released at age 58 and that the statistical predictions for life expectancy should be considered for these age differences and what constitutes a life sentence. *Ruiz*, 2020 IL App (1st) 163145, ¶ 44 (majority opinion). Rather than follow the rationale in *Buffer*, the court appeared to adopt an "age of release" standard in determining whether a 40-year sentence should be considered a *de facto* life sentence for young adults. *Id.* ¶¶ 43-45. However, the *Buffer* court expressly considered and rejected arguments that involved statistical data on the number of years that would result in a survivable sentence or that suggested that *Miller* be triggered when a sentence results in a "geriatric release." 2019 IL 122327, ¶¶ 31-33. But see *id.* ¶¶ 53-68 (Burke, J., specially concurring) (stating that "the answer to the question "what constitutes a *de facto* life sentence is essentially a mathematical calculation"). Further, and purely as an aside, we question whether the procedure espoused in *Ruiz* comports with settled procedures regarding satisfaction of the cause-and-prejudice test for purposes of filing a successive postconviction petition.

¶ 40     We believe that the analysis in *People v. Woods*, 2020 IL App (1st) 163031, comports with *Miller* and *Buffer*. In *Woods*, the defendant, who was 17 years old at the time of the offenses, was found guilty of attempted murder and aggravated battery with a firearm and sentenced to 33 years' imprisonment, which included a mandatory 25-year firearm enhancement. *Id.* ¶¶ 23, 25. In his successive postconviction petition, the defendant alleged, *inter alia*, that his sentence violated the proportionate penalties clause, as applied to him, because he was a juvenile when the offenses occurred and the mandatory sentencing enhancement removed discretion from the sentencing court. *Id.* ¶ 30. This court held that because the defendant received neither a mandatory nor a *de facto* life sentence, as defined in *Buffer*, 2019 IL 122327, ¶¶ 57, 63, his challenge failed to demonstrate prejudice. The court further noted that our supreme court has upheld the constitutionality of mandatory firearm sentencing schemes and stated that there was no indication from the legislature that the application of mandatory firearm enhancements to juveniles shocked our sense of moral decency. *Woods*, 2020 IL App (1st) 163031, ¶ 58 (citing *People v. Sharpe*, 216 Ill. 2d 481, 524-25 (2005)).

¶ 41     The State argues, and we agree, that *Woods* supports its position on appeal. Similar to *Woods*, defendant here has also not received a natural or *de facto* life sentence. As such, his challenge fails to demonstrate a constitutional violation. See also *People v. Wilson*, 2016 IL App (1st) 141500, ¶ 44 (stating that our supreme court "has interpreted *Roper*, *Graham*, and *Miller* to apply 'only in the context of the most severe of all criminal penalties' " (quoting *People v. Patterson*, 2014 IL 115102, ¶ 110)).

¶ 42     Defendant distinguishes *Woods* on the basis that the defendant's offense there occurred near a school and involved the shooting of a police officer and that the defendant was asserting his claim in a successive postconviction petition, as opposed to an initial petition as here. Additionally,

defendant points out that the defendant in *Woods* received a 33-year sentence, whereas defendant here received a 40-year sentence, "only *one day less* than what the Court has deemed a *de facto* life sentence for juvenile offenders." For these reasons, defendant argues that *Woods* "does not negate the arguable nature of [his] initial postconviction claim."

¶ 43    We find the facts offered by defendant as distinguishable to be without any meaningful difference, as they do nothing to alter the fact that his sentence was neither the qualifying life sentence proscribed by *Miller* nor the *de facto* life sentence as expressly defined by *Buffer*.

¶ 44    Finally, defendant cites *Barnes*, 2018 IL App (5th) 140378, and *People v. Womack*, 2020 IL App (3d) 170208, both of which were decided by our appellate court in other districts. In *Barnes*, the defendant, who was 17 years old at the time of the offense, was sentenced to a total of 37 years' imprisonment, which included a 15-year mandatory firearm enhancement, for armed robbery. 2018 IL App (5th) 140378, ¶ 1. The defendant argued that the mandatory firearm enhancement statute was unconstitutional under the proportionate penalties clause. *Id.* ¶ 16. The Fifth District found the *Aikens* decision to be instructive and held that "the sentencing scheme employed by the trial court, as applied to [the] defendant, violate[d] the proportionate penalties clause of the Illinois Constitution, as it shocks our community's evolving standard of moral decency." *Id.* ¶ 25. For the reasons that we decline to follow *Aikens*, we also decline to follow *Barnes*.

¶ 45    In *Womack*, the defendant was 16 years old at the time of the offense and was sentenced to a total of 38 years' imprisonment, which included a mandatory 20-year firearm enhancement. 2020 IL App (3d) 170208, ¶ 1. In a successive postconviction petition, the defendant alleged that he established cause and prejudice to bring an as-applied claim that the firearm enhancement violated the proportionate penalties clause. *Id.* ¶ 13. Citing *Aikens* and *Barnes*, the majority concluded that

the mandatory enhancement as applied to the defendant violated the proportionate penalties clause insofar as the enhancement did not comport with "Illinois's evolving standard of decency" in this case. *Id.* ¶ 15. However, the majority did not address the fact that the defendant's sentence was not a *de facto* life sentence, and, in fact, the majority did not cite *Buffer* at all. We disagree with the majority's conclusion in that respect because, again, it is clear from our supreme court precedent that *Miller* is only applicable where a defendant has received a natural or *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶ 27 (a defendant must show both (1) that he was "subject to a life sentence, mandatory or discretionary, natural or *de facto*," and (2) that "the sentencing court failed to consider youth and its attendant characteristics"); *Holman*, 2017 IL 120655, ¶ 40; *Reyes*, 2016 IL 119271, ¶ 9; see also *Womack*, 2020 IL App (3d) 170208, ¶¶ 30-31 (Schmidt, J., dissenting) (stating that *Miller* should not apply, as the defendant "did not receive a life sentence in any sense"); *People v. Carmichael*, 2021 IL App (1st) 173031-U, ¶ 36 (Hyman, J., concurring) (stating that the 19-year-old defendant's 35-year sentence did not qualify for protections under *Miller* because he did not receive a *de facto* life sentence as it has been defined in *Buffer*).

¶ 46                                III. CONCLUSION

¶ 47     To pass first stage muster under the Act, a petitioner must state the gist of a constitutional claim. *Hodges*, 234 Ill. 2d at 9. Here, defendant challenges imposition of the mandatory firearm enhancement provision, absent consideration of the characteristics attendant to youth, as violative of the proportionate penalties clause of the Illinois Constitution. As the United States Supreme Court noted in *Harmelin*, "[t]here can be no serious contention *** that a sentence which is not otherwise cruel or unusual becomes so simply because it is "mandatory.' " *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (citing *Chapman v. United States*, 500 U.S. 453, 467 (1991)). In fact, our supreme court held that the mandatory firearm enhancement does not violate the proportionate

penalties clause. See *Sharpe*, 216 Ill. 2d 481; see also *People v. Pace*, 2015 IL App (1st) 110416, ¶ 41. Further, and consistent with the holdings in *Miller* and *Buffer*, only natural or *de facto* life sentences require consideration of youth and its attendant characteristics.

¶ 48       Defendant received an aggregate sentence of 40 years, 25 of which included the mandatory firearm enhancement. As defendant did not receive the most severe penalty possible, the procedural protections under *Miller* were not required. His sentence was not "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *Sharpe*, 216 Ill. 2d at 493. We decline defendant's entreaty to extend the procedural requirements of *Miller* to sentences that do not violate the substantive rule of constitutional law announced therein. Because defendant has not stated the gist of a constitutional claim, summary dismissal of his first stage petition was proper.

¶ 49       For the reasons stated, we affirm the judgment of the circuit court.

¶ 50       Affirmed.

---

**No. 1-20-0112**

---

| | |
|---|---|
| **Cite as:** | *People v. Hilliard*, 2021 IL App (1st) 200112 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 13-CR-19027; the Hon. Vincent Michael Gaughan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Caroline E. Bourland, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (John E. Nowak, Tasha Kelly, and Gina DiVito, Assistant State's Attorneys, of counsel), for the People. |