2022 IL App (1st) 200622-U

SECOND DIVISION
March 29, 2022

No. 1-20-0622

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 14759 |
| | ) | |
| TONY J. SERRANO, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justice Cobbs concurred in the judgment.
Justice Lavin dissented.

ORDER

¶ 1   *Held*:   The judgment of the circuit court of Cook County summarily dismissing defendant's postconviction petition is reversed; defendant stated an arguable claim his sentence violates the Proportionate Penalties Clause of the Illinois constitution as applied to him where the trial court sentenced defendant without consideration of the circumstances of his youth.

¶ 2   The circuit court of Cook County convicted defendant, Tony J. Serrano, of first degree murder and sentenced him to 85 years' imprisonment including a mandatory 25-year sentence enhancement for personally discharging a firearm causing death. Defendant was 19-years-old at the time of the offense. This court affirmed his conviction and sentence on direct appeal. Thereafter defendant filed a postconviction petition in which he argued his sentence violates the

Proportionate Penalties Clause of the Illinois constitution and that the mandatory 25-year enhancement is unconstitutional as applied to him because it prevented the trial court from considering his age and rehabilitative potential before imposing the sentence. The trial court summarily dismissed defendant's postconviction petition.

¶ 3    For the following reasons, we reverse the summary dismissal of defendant's postconviction petition and remand for further proceedings.

¶ 4                              BACKGROUND

¶ 5    The following facts that are pertinent to the issues in this appeal are taken from our discussion on direct appeal of the trial proceedings leading to defendant's postconviction petition. The State charged defendant with first degree murder for the shooting death of Shanna Gayden, the 13-year-old victim of a gunshot fired during an initially verbal altercation between members of rival street gangs. Gayden had been a bystander to the altercation. Defendant and his co-defendant, Mwenda Murithi, who are both members of the same street gang, were tried in a bifurcated trial with separate juries.

¶ 6    Chicago police officer Edwin Pagan testified his investigation of the shooting scene indicated Murithi, a person Officer Pagan was already familiar with from the area, may have been present at the shooting. After Officer Pagan placed him under arrest for drinking on a public way, Murithi told the officer to "give [him] a break" because he had some information regarding the shooting. After being advised of his *Miranda* rights, Murithi then told Officer Pagan he knew the shooter was an Imperial Gangster gang member named "Tony." Officer Pagan arrested defendant and brought both defendant and Murithi to the Area 5 police station.

¶ 7    Felix Jusino, a member of defendant's and Murithi's gang, testified he saw Murithi arguing with members of a rival street gang and that defendant was with him. Jusino saw

defendant fire a handgun at the members of the rival gang. Roquelin Bustamante testified she saw the confrontation between the rival gang members. Bustamante testified that Murithi yelled at the other men to come closer and when one of them did, Murithi waved at the gunman and told him to "wreck 'em." The gunman then started firing. Chicago police detective John Valkner testified he questioned defendant. Defendant told Detective Valkner he was 19–years–old and had been a member of the Imperial Gangsters for three months. After Detective Valkner told defendant that someone had identified him in the shooting, defendant admitted he had been "ordered" to shoot at the rival gang. Defendant said a fellow gang member came to his house and told him to take a gun over to Drake and McLean for Murithi, which he did. Defendant said Murithi then ordered him to shoot. When defendant hesitated, Murithi asked for the gun. Defendant then fired several shots at the rival gang members but struck Gayden.

¶ 8    A jury found defendant guilty of first degree murder. The jury also found defendant discharged a firearm that proximately caused the death of the victim. Following a sentencing hearing, the trial court sentenced defendant to a 60-year prison term for first degree murder and a 25-year mandatory consecutive sentence based on the discharging of the firearm. This court affirmed defendant's conviction and sentence on direct appeal. *People v. Serrano*, 2011 WL 9692692, *21.

¶ 9    On October 28, 2019, defendant filed a *pro se* petition for postconviction relief. The petition reads, in part, as follows:

    "The issues being pursued in this petition are based on new scientific

    studies and evolving case law that have upheld the research findings that

    immaturity in adolescence continues until early 20s. Attached hereto is a 2017

    declaration from Dr. Erin David Bigler, who is a neuropsychologist and professor

of psychology and neuroscience. His declaration is based on studies that were done after the Supreme Court's decisions in *Roper v. Simmons* (2005) 543 U.S, 551 and *Miller v. Alabama* (2012) 567 U.S. 460."

¶ 10    The petition asserts that Dr. Bigler's declaration shows "research that establishes young adults between the ages of (18) and (21) are still undeveloped and psychologically immature in the same ways that individuals under the age of eighteen (18) are." The petition also argues that the 25-year firearm enhancement is unconstitutional as applied to defendant under the Proportionate Penalties Clause because "[t]he sentencing court was restricted from considering defendant's age at the time of the offense; or defendant's ability to be rehabilitated because of the mandatory sentencing scheme." Defendant argues the mandatory firearm enhancement provides "no outlook on restoring him back to useful citizenship." Defendant also argues that based on new Illinois law regarding juvenile parole (see 730 ILCS 5/5-4.5-115(b) (West 2020)) and Illinois caselaw, "the community's moral standard of decency reflects the acceptance of the new scientific studies that nineteen (19) year olds are still immature and functioning as adolescences (*sic*) and should be given the same consideration as juveniles under the age of (18) eighteen, at the time the offense is committed." Finally, the petition argues:

"Defendant's 85 year sentence at a 100% percent (*sic*), is cruel and degrading as to shock the moral sense of the present changing community. At the time of defendant's sentence, the trial judge did not consider defendant's youthfulness or rehabilitation potential and therefore the trial judge did not consider restoring the defendant back to useful citizenship, nor does the *de facto* natural life sentence reflect that. Defendant's *de facto* natural life sentence violates the Illinois Constitution (Ill. Const. 1970, art. I-11) as applied to him."

¶ 11    In January 2020 the trial court entered a written order dismissing defendant's petition.

¶ 12    This timely appeal followed.

¶ 13                                    ANALYSIS

¶ 14    On appeal from the trial court's summary dismissal of his postconviction petition, defendant argues he "raised at least an arguable claim that both the mandatory imposition of a 25-year firearm enhancement and the aggregate 85-year *de facto* life sentence were unconstitutional as applied to him ***, where he can develop his claim in the manner encouraged by the Supreme Court (*sic*)." This court reviews the summary dismissal of a postconviction petition *de novo*. *People v. Patterson*, 2018 IL App (1st) 160610, ¶ 14.

¶ 15    The requirements of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) are well known. See *People v Hilliard*, 2021 IL App (1st) 200112, ¶¶ 18-19. It has also been established that Illinois, through the Proportionate Penalties Clause of the Illinois constitution, will apply the considerations in the *Miller* line of cases to young adults who receive mandatory or discretionary *de facto* life sentences. See *People v. Horshaw*, 2021 IL App (1st) 182047, ¶ 69. In *Horshaw*, this court observed that "[t]he impact of the supreme court's holdings in *Thompson* and *Harris* has been to permit young adult offenders to bring successive postconviction claims alleging that their sentences in excess of 40 years imposed without consideration of the *Miller* factors are unconstitutional as applied to them under the proportionate penalties clause." *Id.* However, the court also noted an apparent split in authority on the question of "whether the imposition of a discretionary life sentence legally disables a young adult offender from raising such a challenge." *Id.* ¶ 75. It does not. See *People v. Lenoir*, 2021 IL App (1st) 180269, ¶ 58 ("We disagree that defendant's discretionary sentence necessarily precludes him from raising his proportionate penalties claim. In fact, our supreme

court explicitly found that *Miller* applies to discretionary life sentences. *Holman*, 2017 IL 120655, ¶ 40."); see also *Aikens*, 2016 IL App (1st) 133578, ¶¶ 33-38 (applying Proportionate Penalties Clause to discretionary sentence of 40 years' imprisonment). But see *People v. Howard*, 2021 IL App (2d) 190695, ¶ 5 ("Given the court's comments in *Dorsey*, it is now questionable whether *Miller*'s principles could ever apply to a discretionary life sentence, especially in relation to the proportionate penalties clause.").

¶ 16    A defendant is not foreclosed from asserting a right to *Miller*-type protections under the Proportionate Penalties Clause of the Illinois constitution. A proportionality challenge derives from article I, section 11, of the Illinois Constitution of 1970. Section 11, which is commonly referred to as the Proportionate Penalties Clause, provides that '[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' Ill. Const. 1970, art. I, § 11." *People v. Williams*, 2015 IL 117470, ¶ 9. See also *People v. Clemons*, 2012 IL 107821, ¶¶ 39-41. We note the text of the Illinois constitution does not limit the applicability of the Proportionate Penalties Clause to juveniles or individuals who have received life sentences.

¶ 17    Therefore, we will focus on the requirements of the Act in this particular context: defendant's argument his *de facto* life sentence violates the Proportionate Penalties Clause because, despite his technically having attained majority age, the trial court erroneously failed to consider defendant's youth and its attendant circumstances when imposing sentence. Defendant argues he can develop the record in the "manner encouraged by the Supreme Court" (*supra*, ¶ 14) which refers to our supreme court's decision in *Harris*, 2018 IL 121932. There, our supreme court held that a "record must be developed sufficiently to address [a] defendant's claim that *Miller* applies to his particular circumstances." *Harris*, 2018 IL 121932, ¶ 45. The *Harris* court

suggested that the record should include "evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applies to [the] defendant's specific facts and circumstances," and that "only basic information" from a presentence investigation report would be insufficient. See *id.* ¶ 46. We must also view this requirement from *Harris* in the extended context of this case: that this case is at the first stage of postconviction proceedings. At the first stage, "to survive summary dismissal, [defendant] is only required to include a limited amount of detail" surrounding the alleged constitutional violation. *People v. Hatter*, 2021 IL 125981, ¶ 24. "We are at the pleading stage, so [defendant] is not required to prove anything. He needs only to plead facts justifying further proceedings." *People v. Ruiz*, 2020 IL App (1st) 163145 ¶ 55.

¶ 18     The State argues defendant's petition fails to state an arguable claim because defendant "failed to allege facts particular to his own circumstances *** that support an allegation that there were any issues particular to him that rendered him functionally younger than his chronological age of 19 years old." The State argues defendant was required by *Harris* to "do more than just point to [his] age and allege typical mitigating circumstances, to prove entitlement to *Miller* protections." According to the State, defendant was required to "show 'evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applied to defendant's specific facts and circumstances.' (Emphasis omitted.) *Harris*, 2018 IL 121932, ¶ 46." However, in arguing that "age alone, and mere mitigating circumstances, are not enough to show an as-applied constitutional violation based on *Miller*," the State admits that "the circumstances surrounding the crime" may be relevant, just not determinative. The State also agrees that *Miller* protections are afforded to those with "the

specific brain development issues known, and *thus presumed,* to be possessed by minors." (Emphasis added.)

¶ 19   Defendant contends he did precisely what *Harris* directs: raised his as-applied constitutional claim in the trial court where the record can be developed. He notes he alleged that he was "still immature and functioning as [an adolescent]" (but we find that statement in defendant's petition is a general statement about 19-year-olds and not specifically about himself). Defendant also relies on the facts of his particular case, particularly the fact Murithi ordered defendant to bring the gun and to open fire, which defendant argues "highlight[s] the degree to which his immaturity resulted in impulsive action that was exacerbated by peer pressure imposed *** by an older gang member with a degree of authority over him." Defendant argues that denying him the opportunity to develop his claim that he is sufficiently similar to a juvenile such that *Miller*'s protections should apply to him would "improperly place him in a 'catch-22.' " Finally, defendant argues it is arguable under the law that the mandatory imposition of a 25-year firearm enhancement to his sentence for murder—focusing on "the mandatory nature of the firearm enhancement"—violates the Proportionate Penalties Clause as "shock[ing] the conscience of the community because "it did not allow for the trial court to consider [his] youth or other mitigating factors before determining if that enhancement was appropriate."

¶ 20   As previously stated, our supreme court has found that for purposes of a Proportionate Penalties Clause claim an emerging adult may argue that the "*Miller* factors" apply to his or her particular circumstances. See *Harris*, 2018 IL 121932, ¶ 45. See also *Thompson*, 2015 IL 118151, ¶ 44; *Johnson*, 2020 IL App (1st) 171362, ¶ 15 ("while *Harris* foreclosed Johnson's eighth amendment argument, it pointedly left open the applicability of the Illinois Constitution"). Those factors have provided "objective factors" that inform our judgment as to whether a

sentence of a young adult offender constitutes a punishment that is "cruel, degrading, or so wholly disproportioned to the offense as to shock the moral sense of the community." (Internal quotation marks and citations omitted.) *People v. Leon Miller*, 202 Ill. 2d 328, 339-40 (2002). To obtain the benefits of the *Miller* line of cases as an emerging adult a defendant must demonstrate that he is sufficiently similar to juveniles such that *Miller*'s protections should apply. *People v. Hilliard*, 2021 IL App (1st) 200112, ¶ 25 ("In *Thompson* and *Harris*, the court opened the door for young adult defendants to demonstrate that their own specific characteristics and circumstances were so like those of a juvenile that imposition of a life sentence, absent the necessary considerations established in *Miller*, would violate the proportionate penalties clause."). "All as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge. Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." (Internal quotation marks and citations omitted.) *Harris*, 2018 IL 121932, ¶ 39. Nonetheless, at this stage of proceedings a defendant is not required to prove that his brain was developmentally more like the brain of a juvenile than an adult or that the circumstances of his life and crime, combined with his level of brain development, warrant application of *Miller* protections to him in sentencing. *Hatter*, 2021 IL 125981, ¶ 24 (stating requirements for postconviction petition at the first stage of proceedings). "We are at the pleading stage, so [defendant] is not required to prove anything. He needs only to plead facts justifying further proceedings." *Ruiz*, 2020 IL App (1st) 163145 ¶ 55.

¶ 21 In this case, in support of his petition, defendant does rely primarily on "the 'evolving science' on juvenile maturity and brain development that formed the basis of the *Miller* decision." See *Thompson*, 2015 IL 118151, ¶ 38. The difference between this case and *Thompson*

is that here, we find the record does plead facts "about how that science applies to the circumstances of defendant's case, the key showing for an as-applied constitutional challenge." *Id*. Defendant's petition asserts that this "evolving" field of science now knows that "the specific brain development issues *** possessed by minors" are possessed by people his age. Defendant attached to his petition evidence to support that claim in the form of Dr. Bigler's declaration. The declaration contains more than generalities about a "growing *** scientific trend to grant more weight to the qualities of youth in sentencing young adults," as the State claims. Rather, the declaration references and explains scientific studies that have established that the development of young adult brains like defendant's is like that of juveniles. The declaration reads, in part, as follows:

"Previously it had been believed that brain maturation ended during late childhood to mid adolescence. With the advent of various neuroimaging and cognitive neuroscience methods, that conclusion was challenged in the late 1990's/2000's as a result of research that examined the brain anatomy, patterns of brain activity and neuropsychological function.

Multiple brain imaging techniques have addressed this, especially those involving magnetic resonance imaging (MRI) along with functional MRI(fMRI). fMRI's permit researchers to observe the brains of living individuals and examine their response under different conditions. The results of this research shows that key brain systems and structures, especially those involved in self-regulation and higher-order cognition, continue to mature throughout adolescence. [(The declaration includes a footnote that states: "Adolescence is used here to include people in their mid-to-late teens to mid-twenties.")]

Further study conducted since the Supreme Court's decisions in [*Roper* and *Miller*] has shown that several aspects of brain development affecting judgment and decision-making continue well beyond age 20. It is now widely accepted that brain maturation continues into young adulthood. Individuals in their late teens and early 20's are more similar to younger teenagers than had been previously thought.

* * *

Recent research shows that individuals in their late teens and early 20's are less mature than their older counterparts in several important and legally-relevant ways. Contemporary developmental neuroscience has shown that the final maturation period actually extends into the mid-twenties."

The declaration explains the studies and the science behind them and cites to several different scientific studies and papers. It summarizes, in part, by stating: "Like their teenaged counterparts, adolescents in their early 20's demonstrate continued capacity for behavioral change—including among those accused of committing violent crimes." Importantly, Dr. Bigler also states: "Neurobiological and psychological immaturity of the sort that the Supreme Court references in its opinions on the diminished culpability of minors is also characteristic of individuals in their late teens and early 20's."

¶ 22    In this case, the State asserts that "*Miller* and its progeny allow for a *presumption* that minors under the age of 18 may suffer from these cognitive issues and a lack of maturity."

(Emphasis added.) We agree. See *Miller*, 567 U.S. at 471.[1] *Miller* and its progeny relied on the available science (see *id*. at 471-72) which is, it is agreed, "evolving." That science, according to defendant's petition and supporting facts, has "evolved" to include people defendant's age. Defendant will have to prove that claim, but it is at least arguable.

¶ 23    Further, as stated above, *Thompson* is distinguishable. The State argues the *Thompson* court did not accept the defense's argument that the "evolving science on juvenile maturity and brain development" applied with equal force to a young adult defendant. See *Thompson*, 2015 IL 118151, ¶ 38. The *Thompson* court found that the record contained "nothing about how that science applies to the circumstances of [the] defendant's case." *Thompson*, 2015 IL 118151, ¶ 38. Specifically, the court complained that the record did not "contain any factual development on the issue of whether the rationale of *Miller* should be extended beyond minors under the age of 18." *Id*. However, nothing in *Thompson* indicates that court had before it any facts concerning the "evolved science" of brain development of young adults like defendant. In this case, defendant has presented "some factual basis" for application of the "evolved science" of brain development that has occurred and which establishes that the developmental issues that formed the basis of the *Miller* decision are present in young adults as well. Unlike in *Thompson*, in this

---

[1]    "*Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, we explained, 'they are less deserving of the most severe punishments.' [Citation.] Those cases relied on three significant gaps between juveniles and adults. First, children have a ' "lack of maturity and an underdeveloped sense of responsibility," ' leading to recklessness, impulsivity, and heedless risk-taking. [Citation.] Second, children 'are more vulnerable *** to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings. [Citation.] And third, a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].' [Citation.]" *Miller v. Alabama*, 567 U.S. 460, 471 (2012).

case we cannot say there is "nothing about how that science applies to the circumstances of defendant's case." See *Thompson*, 2015 IL 118151, ¶ 38.

¶ 24    The State also argues that in addition to establishing the applicability of the relevant science the defendant is also required to "establish the presence of the other *Miller* factors." The State admits, however, that those factors include both "any pressures that may have led to the commission of the offense" and the defendant's prospects for rehabilitation. Without deciding whether a defendant must establish both of these factors as the State claims, we find that in this case defendant has established both the applicability to him of the evolved science on brain maturation and the presence of other *Miller* factors that may serve to mitigate his sentence.

¶ 25    The additional *Miller* factor of "the juvenile defendant's degree of participation in the homicide and any evidence of *** peer pressures that may have affected him" (see *Holman*, 2017 IL 120655, ¶ 46 (listing *Miller* factors)) is established by the trial evidence itself where defendant, who was new to his neighborhood and his gang, was ordered to bring a gun to the location of a confrontation he did not start or escalate, and was repeatedly pressured to open fire at a crowd on the street. Additionally, the factor related to "the juvenile defendant's prospects for rehabilitation" (*Holman*, 2017 IL 120655, ¶ 46) is established by the evidence supporting defendant's own level of brain development and the *Miller* line of cases, which have found that the penological justifications for life without parole, including the absence of rehabilitative potential, collapse in light of "the distinctive attributes of youth" and which defendant has adequately pleaded he shares. See *Montgomery v. Louisiana*, 577 U.S. 190, 208 (2016) (quoting *Miller*, 567 U.S. at 472-73); *Graham v. Florida*, 560 U.S. 48, 74, (2010) ("A sentence of life imprisonment without parole, however, cannot be justified by the goal of rehabilitation. *** This judgment is not appropriate in light of a juvenile nonhomicide offender's capacity for change and

limited moral culpability."). See also *Jones v. Mississippi*, 141 S. Ct. 1307, 1337 (2021) (Sotomayor, J., joined by Breyer, J., and Kagan, J., dissenting) ("The point of *Miller* and *Montgomery* is that juveniles, even those who commit murder, have the capacity to grow and mature, to rehabilitate. The Eighth Amendment requires that sentencers (and reviewing courts) not presume that most juveniles will forever remain the 'murderers,' *** they once were.").

¶ 26     Taking defendant's allegations as true, and because the facts in the petition are not positively rebutted by the record, we must presume that defendant has the brain development issues to which "the *Miller* protections are afforded." The State's factual argument that defendant himself initiated the shooting has dubious support but is, regardless, premature. "Our supreme court has described the circuit court's role during the first stage of review as acting strictly in an administrative capacity by screening out those petitions which are without legal substance or are obviously without merit. [Citation.]" *Romero*, 2015 IL App (1st) 140205, ¶ 26. Defendant's claim he was ordered to shoot is not positively rebutted by the record.

> "A petition will only be considered frivolous or patently without merit where it has no arguable basis either in law or in fact. [Citation.] Indisputably meritless legal theories, such an allegation rebutted by the record, and fanciful, or delusional factual allegations, are examples of allegations that are frivolous or patently without merit. [Citation.]" *Romero*, 2015 IL App (1st) 140205, ¶ 26.

Defendant's factual claims are not fantastic nor delusional; and defendant's legal claim is not positively rebutted by the record nor lacking in any support. We find defendant has stated an arguable claim of a constitutional violation of his rights under the Proportionate Penalties Clause of the Illinois constitution.

¶ 27    Accordingly, the trial court's judgment is reversed and the cause remanded for further proceedings.

¶ 28                                    CONCLUSION

¶ 29    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings.

¶ 30    Reversed and remanded.

¶ 31     JUSTICE LAVIN, dissenting:

¶ 32    Respectfully, I dissent. Our supreme court recently held that a defendant must provide or cite evidence regarding how the evolving science on brain development and juvenile maturity applies to his specific facts and circumstances. *People v. House*, 2021 IL 125124, ¶ 29. While defendants need not prove anything at the pleading stage, to justify additional proceedings, youthful offenders "must still plead specific and individual characteristics as related to them." *People v. Evans*, 2021 IL App (1st) 172809, ¶ 19. In addition, the low threshold for surviving first-stage proceedings "does not excuse the pro se petitioner from providing factual support for his claims." *People v. Allen*, 2015 IL 113135, ¶ 24. Even at the first stage, a defendant must show his allegations are capable of independent corroboration. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009).

¶ 33    Here, defendant relies on scientific evidence related to youthful offenders in general and has identified factors in this case that he believes, via *Miller*, show that he is the equivalent of a juvenile. He has not, however, provided any independent evidence showing that the evolving science on brain development shows that defendant in particular is the equivalent of a juvenile. Moreover, this court has correctly held that because the proportionate penalties clause focuses on the sentence in and of itself, the trial court's failure to consider an adult offender's youth before

- 15 -

imposing that sentence does not create a viable proportionate penalties claim. *People v. Howard*, 2021 IL App (2d) 190695, ¶¶ 39-40; *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 61.

Accordingly, I would affirm the trial court's judgment.