# Illinois Official Reports

## Appellate Court

---

### *People v. Banks*, 2015 IL App (1st) 130985

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEANDRE BANKS, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-0985 |
| Filed | June 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 02-CR-17602; the Hon. Nicholas R. Ford and the Hon. Michael Toomin, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Caroline E. Bourland, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Sheilah O'Grady-Krajniak, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant Deandre Banks appeals from the trial court's denial of his motion to vacate the judgment order dismissing his petition for postconviction relief. However, defendant has not challenged that denial in this court, but instead argues for the first time on appeal that automatic application of the mandatory minimum sentence of 45 years for a juvenile defendant and the statute providing for an automatic transfer to adult court for a juvenile defendant charged with first degree murder violate the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).

¶ 2     Following a bench trial, defendant was found guilty of first degree murder in the March 2002 homicide of Ronnie Washington. He was subsequently sentenced to 45 years in prison, which included 20 years for the first degree murder conviction and 25 years as a mandatory add-on term for the use of a firearm during a homicide.

¶ 3     Since defendant has not raised any issues related to the facts of his case, we will only provide a brief summary of the evidence presented at trial. In the afternoon of March 11, 2002, Washington was in the front yard of his family's home helping sort bags for the family's move. Defendant, wearing a black, hooded sweater, walked up next to Washington and fired a gun five or six times at Washington and then fled. Washington's mother, sister, and fiancée witnessed the shooting from different positions in the house and yard. Later, in June 2002, Washington's fiancée was at the West Suburban Hospital waiting room when she recognized defendant. When defendant looked at her, he left the hospital. From this encounter, the police obtained a name and conducted a photo array for the eyewitnesses. All three witnesses identified defendant in a photo array and later in a lineup. They also identified him in open court. At the conclusion of the trial, the trial court found defendant guilty of first degree murder. Defendant's conviction and sentence were affirmed on direct appeal. For a more detailed discussion of these facts, see *People v. Banks*, No. 1-05-1077 (Sept. 21, 2007) (unpublished order under Supreme Court Rule 23).

¶ 4     In August 2008, defendant filed his *pro se* postconviction petition, asserting various claims of ineffective assistance of trial counsel. The trial court summarily dismissed defendant's petition in October 2008. In January 2013, defendant filed a *pro se* motion to vacate the judgment order dismissing his petition for postconviction relief. In the motion, defendant contended that he never received notice of the dismissal as required under the Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1 to 122-8 (West 2008)) and that therefore the judgment was void. The trial court denied defendant's motion in February 2013.

¶ 5     This appeal followed.

¶ 6     Initially, the State contends that this court lacks jurisdiction over defendant's appeal because defendant's *pro se* motion was untimely. It is undisputed that defendant did not appeal the dismissal of his *pro se* postconviction petition within 30 days. See 725 ILCS 5/122-7 (West 2008); Ill. S. Ct. Rs. 606(b), 651(d) (eff. Feb. 6, 2013). Rather, defendant maintains that his motion to vacate the dismissal of his postconviction petition was in substance a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)) because he argued that the trial court failed to provide him with notice of the dismissal of his petition and, therefore, the dismissal order was void.

¶ 7        Section 2-1401 sets forth a comprehensive, statutory procedure that allows for the vacatur of a final judgment older than 30 days. 735 ILCS 5/2-1401 (West 2012). Section 2-1401 requires that the petition be filed in the same proceeding in which the order or judgment was entered, but it is not a continuation of the original action. *Id*. "To obtain relief under section 2-1401, the defendant 'must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief.' " *People v. Pinkonsly*, 207 Ill. 2d 555, 565 (2003) (quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986)).

¶ 8        Further, the statute provides that petitions must be filed not later than two years after the entry of the order or judgment, but offers an exception to the time limitation for legal disability and duress or if the ground for relief is fraudulently concealed. 735 ILCS 5/2-1401(c) (West 2012). "Petitions brought on voidness grounds need not be brought within the two-year time limitation. Further, the allegation that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence." *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002).

¶ 9        Here, it also undisputed that defendant filed his motion beyond the two-year timeframe set forth in section 2-1401, but he asserted that the dismissal of his postconviction petition was void because the trial court did not give him notice of the dismissal. A judgment is void only when the trial court that entered it lacked jurisdiction. *People v. Moran*, 2012 IL App (1st) 111165, ¶ 15. According to the State, defendant failed to argue that the trial court lacked jurisdiction to dismiss his postconviction petition and, therefore, defendant's motion to vacate was untimely and this court lacks jurisdiction. We disagree with the State. The State's argument regarding defendant's failure to allege that the trial court lacked jurisdiction to dismiss his postconviction petition does not affect the jurisdiction of this court over the appeal. Rather, the failure to argue jurisdiction by defendant was a basis to deny defendant's motion and has no bearing on our jurisdiction to consider the motion or an appeal therefrom. Accordingly, we conclude that we have jurisdiction to consider the denial of defendant's motion.

¶ 10       However, defendant on appeal has not argued that the denial of his motion was improper on the merits, but instead, raises two constitutional challenges to his sentence: that the automatic application of a mandatory minimum sentence of 45 years for a juvenile defendant and the statute providing for an automatic transfer to adult court for a juvenile defendant charged with first degree murder violate the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. As pointed out above, defendant did not raise these issues in the trial court, but a defendant may challenge the constitutionality of a statute at any time. *In re M.I.*, 2013 IL 113776, ¶ 39; *People v. Harris*, 2012 IL App (1st) 092251, ¶ 11.

¶ 11       We first address defendant's contention that the automatic transfer statute is unconstitutional. The automatic transfer provision of the Juvenile Court Act of 1987 excludes juveniles over 15 years of age who are charged with particular enumerated crimes, including first degree murder, from juvenile court jurisdiction. 705 ILCS 405/5-130 (West 2002). Defendant relies on the recent United States Supreme Court decisions in *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010), *J.D.B. v. North Carolina*, 564 U.S. ___, 131 S. Ct. 2394 (2011), and *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012),

to assert that the automatic transfer provision violates due process, the eighth amendment, and the proportionate penalties clause because he was automatically transferred to adult court without any consideration of his youthfulness.

¶ 12 However, after defendant had filed his opening brief, the Illinois Supreme Court issued a decision which rejected these arguments, holding that the automatic transfer statute is constitutional. *People v. Patterson*, 2014 IL 115102. Like defendant in the instant case, the defendant in *Patterson* supported his due process claims by citing to *Roper*, *Graham*, and *Miller*. *Id.* ¶ 97. The supreme court refused to extend the eighth amendment analysis in those cases to due process claims.

> "[H]ere defendant is attempting to support his due process argument by relying on the Supreme Court's eighth amendment analysis in *Roper*, *Graham*, and *Miller*. Defendant's constitutional argument is crafted from incongruous components. Although both the Supreme Court and defendant have emphasized the distinctive nature of juveniles, the applicable constitutional standards differ considerably between due process and eighth amendment analyses. A ruling on a specific flavor of constitutional claim may not justify a similar ruling brought pursuant to another constitutional provision. See *People v. Davis*, 2014 IL 115595, ¶ 45 (finding the juvenile defendant's sentence violated the eighth amendment but declining to consider his state due process and proportionate penalties challenges). In other words, a constitutional challenge raised under one theory cannot be supported by decisional law based purely on another provision. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Accordingly, we reject defendant's reliance on the Supreme Court's eighth amendment case law to support his procedural and substantive due process claims." *Id.*

¶ 13 In rejecting the argument that the automatic transfer statute violated the eighth amendment and the proportionate penalties clause, the supreme court found that the provision is not punitive in nature, rejecting the defendant's argument that the statute operated as a sentencing statute. *Id.* ¶ 104. The court observed that it has repeatedly held that "access to juvenile courts is not a constitutional right because the Illinois juvenile justice system is a creature of legislation." *Id.*

¶ 14 The court noted that it had previously concluded that "the purpose of the transfer statute is to protect the public from the most common violent crimes, not to punish a defendant. In enacting the automatic transfer statute, the legislature has reasonably deemed criminal court to be the proper trial setting for a limited group of older juveniles charged with at least one of five serious named felonies." *Id.* ¶ 105 (citing *People v. J.S.*, 103 Ill. 2d 395, 403-04 (1984)).

> "The mere possibility that a defendant may receive a potentially harsher sentence if he is convicted in criminal court logically cannot change the underlying nature of a statute delineating the legislature's determination that criminal court is the most appropriate trial setting in his case. We reject the connection between the transfer statute and the imposition of harsher punishment alleged by defendant as simply too attenuated to be persuasive." *Id.*

¶ 15 The supreme court held that "in the absence of actual punishment imposed by the transfer statute, defendant's eighth amendment challenge cannot stand" and "[b]ecause the Illinois proportionate penalties clause is co-extensive with the eighth amendment's cruel and unusual punishment clause [citation], we also reject defendant's challenge under our state constitution." *Id.* ¶ 106.

¶ 16    Under *Patterson*, defendant's identical challenge must fail. In his reply brief, defendant maintains that *Patterson* was wrongly decided and this court should follow the dissent's reasoning. However, even if we were to disagree with the well-reasoned analysis in *Patterson*, which we do not, "[t]he appellate court lacks authority to overrule decisions of [the supreme] court, which are binding on all lower courts." *People v. Artis*, 232 Ill. 2d 156, 164 (2009).

¶ 17    Defendant next raises similar constitutional arguments in regard to the mandatory minimum sentence for first degree murder, the mandatory firearm enhancement, and the truth-in-sentencing provision, which result in a mandatory minimum sentence of 45 years. Defendant contends that the imposition of this sentence on defendant, a juvenile offender, fails to allow the trial court to have an opportunity to make "an individualized determination as to whether any of these statutes should apply in light of [defendant's] age and individual culpability." Defendant asserts that "the imposition of the harsh mandatory adult penalties imposed upon [defendant,] a minor, violates the Eighth Amendment as well as the proportionate penalties clause of the Illinois Constitution."

¶ 18    Defendant points to the convergence of three statutes for his argument. First, the sentence for first degree murder is 20 to 60 years in prison. 730 ILCS 5/5-8-1(a)(1)(a) (West 2002). Next, under the firearm-enhancement statute, "if, during the commission of the offense, the person personally discharged a firearm that proximately caused *** death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2002). Finally, pursuant to the truth-in-sentencing statute, a person serving a term of imprisonment for first degree murder "shall receive no good conduct credit and shall serve the entire sentence imposed by the court." 730 ILCS 5/3-6-3(a)(2)(i) (West 2002). Based on the convergence of these sentencing statutes, defendant, who was 16 years old at the time of the murder, faced a mandatory minimum sentence of 45 years in prison, during which he would not be eligible for good-conduct credit. Defendant argues that in light of the decisions in *Roper*, *Graham*, and *Miller*, this sentencing structure violates the eighth amendment and the proportionate penalties clause. We disagree.

¶ 19    Unlike those cases, which involved the imposition of the death penalty (*Roper*) and a mandatory life sentence without the possibility of parole (*Graham* and *Miller*) without allowing the trial court any discretion in sentencing, the trial court in the instant case was able to consider defendant's age and culpability in sentencing defendant. The trial court had the discretion to impose a sentence between 45 and 85 years. At sentencing, the trial court detailed its reasoning in imposing a sentence of 45 years.

> "In aggravation, of course, we have a young man 19 years of age today standing before the Court, having been found guilty of the most serious of crimes on the books in this state, first degree murder, and the facts of the case are significant. What they reveal, as I sit here recalling the facts, is a totally senseless, unprovoked killing. [Defendant] came upon this victim in mid afternoon on a city street at a place where he and his family had a right to be certainly, in the presence of his family attempting to move, and that man was virtually executed, he was. [Defendant], a young man with some background as a juvenile, too young as an adult to have accumulated an adult background, no explanation as to why this occurred.

> The factor of the deterrence, the law requires that you must be removed from society for a good number of years, deterrence for other young men similarly situated

who might choose to emulate or follow in the footsteps of [defendant], and those are factors in aggravation, which the Court is dutybound [*sic*] to consider.

And I look at factors in mitigation, and I cannot say that we have a situation here where serious bodily harm or injury was neither contemplated nor threatened, it was, and it was caused as well, and while the ultimate injury, that of death, is implicit in all homicide cases, the manner of death may be considered, as I have already indicated I have. I would have to search far and wide to find evidence of provocation, justification, excuse, reasonable explanations. There are none. All explanations here simply are unreasonable. And while I do not have a crystal ball, it would be difficult for me to sit here and predict that at some finite point down the line [defendant] would be in a situation where this would not happen again or this conduct would not recur. I simply do not know. I cannot predict that.

We all are aware of the perimeters of the possible range of sentencing here. They are substantial. Minimum sentence, he is facing a sentence of 20 years to 60 years even without the gun and, with the gun, an added 25 years to life. It is the feeling of this Court that the minimum sentence in this case are [*sic*] sufficient to provide the sanctions that the law must require for [defendant].

Accordingly, the Court will enter a judgment with a sentence of 20 years, plus 25 years under the enhancements statute, a total of 45 years, which is the minimum sentence that could be imposed in this case."

¶ 20 In *Miller*, the Supreme Court concluded a mandatory life sentence without parole precluded consideration of an offender's age, background, and relative culpability and would likely result in a greater sentence than adults would serve. The *Miller* Court stated, "*Graham*, *Roper*, and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2475. That opportunity occurred in this case when the trial court considered defendant's mitigating evidence and criminal history before imposing the minimum sentence. The Supreme Court has not held that a mandatory minimum sentence of 45 years violates the eighth amendment and we decline to extend their holding to the circumstances of this case. Unlike this line of Supreme Court cases, the trial court had an opportunity to use discretion in sentencing defendant.

¶ 21 We also note that the Illinois Supreme Court in *People v. Davis*, 2014 IL 115595, considered the applicability of *Miller* to mandatory life sentences without the possibility of parole for juveniles as a violation of the eighth amendment. The supreme court held that *Miller* set forth a new substantive rule and a mandatory life sentence without parole for a juvenile could be retroactively challenged. *Id.* ¶¶ 34-43. However, the supreme court made no reference to extending *Miller* to be applicable beyond a mandatory life sentence without parole. Rather, the court observed that "[a] minor may still be sentenced to natural life imprisonment without parole so long as the sentence is at the trial court's discretion rather than mandatory." *Id.* ¶ 43. Additionally, the supreme court in *Patterson* reiterated that it has "unanimously declined to expand the narrow rule in *Graham* to all juveniles sentenced to life without parole for homicides." *Patterson*, 2014 IL 115102, ¶ 109 (citing *Davis*, 2014 IL 115595, ¶¶ 48-49). The *Patterson* court further observed that "both this court and the United States Supreme Court have closely limited the application of the rationale expressed in *Roper*, *Graham*, and *Miller*, invoking it only in the context of the most severe of all criminal penalties. A prison term

totalling 36 years for a juvenile who personally committed three counts of aggravated criminal sexual assault does not fall into that category. We decline defendant's invitation to extend the Supreme Court's eighth amendment rationale to the facts of this case." *Id.* ¶ 110. Here, the trial court had discretion to consider mitigating evidence before imposing a sentence and no eighth amendment violation occurred.

¶ 22 When considering a constitutional challenge regarding the imposition of an adult sentence, the Fourth District in *People v. Pacheco*, 2013 IL App (4th) 110409, reasoned:

"The Supreme Court did not hold in *Roper*, *Graham*, or *Miller* the eighth amendment prohibits a juvenile defendant from being subject to the same mandatory minimum sentence as an adult, unless the mandatory minimum sentence was death or life in prison without the possibility of parole. Defendant was sentenced to neither of these. The minimum 20-year term defendant faced in this case does not compare with the death penalty or a mandatory term of life in prison without the possibility of parole. The sentencing range applicable to defendant in this case is not unconstitutional pursuant to *Roper*, *Graham*, and *Miller*, and the sentence defendant received violated neither the eighth amendment nor the proportionate penalties clause." *Id.* ¶ 58.

¶ 23 We agree with the conclusion reached in *Pacheco* and adopt it in this case. We point out that the same conclusion was recently reached in the Second District. *People v. Cavazos*, 2015 IL App (2d) 120171, ¶¶ 98-100 (declining to extend holdings in *Miller* and *Graham* for mandatory minimum sentencing for juvenile offenders). "Further, to the extent that the Supreme Court decisions can be read broadly as requiring that, before sentencing a juvenile, the sentencing body must have an opportunity to take into account the juvenile's youth at the time of the crime, that requirement was satisfied here." *Id.* ¶ 100. As these cases show, defendant's 45-year sentence did not violate the eighth amendment because the trial court had an opportunity to consider the factors in aggravation and mitigation, including defendant's age. Thus, the mandatory minimum sentencing structure at issue is not unconstitutional.

¶ 24 Additionally, the Illinois Supreme Court has stated the "proportionate penalties clause is coextensive with the cruel and unusual punishment clause." *In re Rodney H.*, 223 Ill. 2d 510, 518 (2006). "A sentence does not offend the requirement of proportionality if it is commensurate with the seriousness of the crime and gives adequate consideration to the rehabilitative potential of the defendant." *People v. St. Pierre*, 146 Ill. 2d 494, 513 (1992). For the same reason his eighth amendment challenge failed, defendant's proportionate penalties argument also cannot succeed.

¶ 25 Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 26 Affirmed.