2023 IL App (1st) 221615-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
December 26, 2023

No. 1-22-1615

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 12 CR 3917 |
| | ) | |
| DONALD ELLIS, | ) | The Honorable |
| | ) | Geary W. Kull, |
| Petitioner-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justice Pucinski concurred in the judgment.
Justice Coghlan dissented.

**ORDER**

¶ 1 *Held:* The appellate court reverses the trial court's first-stage summary dismissal of the petitioner's postconviction petition, finding that it stated the gist of a claim that the mandatory imposition of a firearm enhancement as part of his sentence for an armed robbery committed at age 17 violated his rights under the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11), as applied.

¶ 2 Petitioner Donald Ellis appeals from the trial court's summary dismissal of his postconviction petition. He argues that his petition raised an arguable claim that his rights under the proportionate penalties clause of the Illinois constitution (Ill. Const. 1970, art. I, § 11) were violated by the mandatory imposition of a 15-year firearm enhancement to the 15-year sentence he received for

armed robbery, committed at age 17. We reverse and remand for second-stage proceedings.

¶ 3                                    I. BACKGROUND

¶ 4        The evidence at petitioner's trial demonstrated that, on December 12, 2011, petitioner (then age 17) and a codefendant entered a small grocery store in Cicero. Petitioner initially attempted to squeeze behind the checkout counter but failed to do so. Petitioner and the codefendant then brought merchandise to the counter, where cashier Maria Martinez began to ring up the purchase. Martinez testified that when she opened the cash register drawer, petitioner "barged" into her, placed his arm around her, pointed a firearm at her right temple, and took money from the cash register. Petitioner and the codefendant then fled when a customer entered the store, leaving behind the money and the gun, which was discovered to have had its serial number defaced. Later that day, Martinez identified petitioner in a photo array. The trial court found petitioner guilty of armed robbery with a firearm, aggravated unlawful restraint, possession of a defaced firearm, and unlawful possession of a weapon by a felon.

¶ 5        Following a sentencing hearing on June 27, 2014, the trial court imposed a sentence of 30 years for the armed robbery, which included a mandatory 15-year sentencing enhancement for use of a firearm. See 720 ILCS 5/18-2(b) (West 2010). The trial court also sentenced him to concurrent prison terms of five years for aggravated unlawful restraint,[1] five years for possession of a firearm with a defaced serial number, and three years for unlawful possession of a weapon by a felon.

¶ 6        Petitioner filed a direct appeal, in which he argued for retroactive application of two statutes pertaining to youthful offenders that had been enacted or amended effective January 1, 2016, while his case was pending on direct appeal. *People v. Ellis*, 2017 IL App (1st) 142181-U, ¶ 7. The first

---

[1] The conviction for aggravated unlawful restraint was vacated on direct appeal under the one-act, one-crime rule. *People v. Ellis*, 2017 IL App (1st) 142181-U, ¶ 43.

was section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)), which requires a trial court to consider certain youth-related characteristics in mitigation when sentencing a person who was under age 18 at the time of the offense and gives the trial court the discretion to decline to impose a sentencing enhancement based upon firearm possession. *Id.* § 5-4.5-105(a), (b). The second involved amendments to section 5-130 of the Juvenile Court Act (705 ILCS 405/5-130 (West 2016)), whereby a charge of armed robbery with a firearm against a minor age 16 or younger was removed from the charges subject to automatic transfer out of the jurisdiction of juvenile court. See Pub. Act 99-258, § 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130). This court rejected petitioner's arguments that these statutes applied retroactively to his case and that he was entitled to resentencing. *Ellis*, 2017 IL App (1st) 142181-U, ¶¶ 15, 32-39.

¶ 7        Petitioner raised an alternative argument on direct appeal that, if the court rejected his retroactivity argument, it should hold that the mandatory firearm enhancement is unconstitutional as applied to him because the trial court was not able to consider his youth and rehabilitative potential in accordance with the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *Ellis*, 2017 IL App (1st) 142181-U, ¶ 16. Among the authority petitioner relied upon was the seminal case of *Miller v. Alabama*, 567 U.S. 460, 479 (2012), which held that mandatory mandating life in prison for juvenile offenders without the possibility of parole violates the eighth amendment by precluding the sentencing court from taking an offender's youth and its attendant circumstances into account in crafting a sentence. See *Ellis*, 2017 IL App (1st) 142181-U, ¶ 20. He argued that, because he was only 17 years old at the time of the offense, he deserved punishment that was less severe than the sentence that would be imposed on an adult defendant. *Id.* ¶ 21. He pointed out that he did not graduate from high school, that the robbery was not premeditated, and

that his single adult conviction and lack of violent criminal history made him a likely candidate for restoration to useful citizenship. *Id.* This court rejected petitioner's constitutional argument. It noted that petitioner was subject to a sentencing range of between 21 and 45 years in prison, which was not a penalty comparable to that held unconstitutional in *Miller. Id.* ¶¶ 22-23. The court further noted prior cases holding that a prison term of 30 years does not violate the eighth amendment or the Illinois proportionate penalties clause and declining to extend *Miller* principles to mandatory minimum sentences applied to juveniles. *Id.* ¶ 23 (citing *People v. Banks*, 2015 IL App (1st) 130985, ¶¶ 21-23, and *People v. Pacheco*, 2013 IL App (4th) 110409, ¶ 58).

¶ 8        Petitioner next made an additional alternative argument, which is that the trial court abused its discretion when it sentenced him to 30 years in prison. *Id.* ¶ 24. He reiterated his young age at the time of the offense, lack of violent criminal history, and the fact that no injuries occurred during the robbery. *Id.* The court set forth the facts of his sentencing hearing in detail. *Id.* ¶¶ 25-27. In particular, the trial court reiterated petitioner's youth multiple times, stating that he was a "very troubled young man" and that the court did not know "if [he was] ever going to turn [his] life around." *Id.* ¶ 27. The court noted that his presentence investigation report made no mention of "problems as far as with [his] family and growing up." *Id.* It noted that he had juvenile cases for burglary and robbery, as well as an adult felony conviction for possession of a controlled substances for which he served one year in prison. *Id.* The court found significant the fact that he had not completed his education. *Id.* It found that he "had no remorse" and that this was a "serious incident" that could have gone "from being an armed robbery to a murder just in one false step." *Id.* Ultimately, this court rejected his argument that the trial court had abused its discretion in sentencing, reasoning that the sentence was within the applicable statutory range and that the court had considered appropriate factors in mitigation. *Id.* ¶¶ 28-30.

¶ 9      Petitioner thereafter filed a petition for leave to appeal, which the supreme court denied on January 18, 2018. *People v. Ellis*, No. 122009, 94 N.E.3d 663 (Ill. Jan. 18, 2018) (Table).

¶ 10     The instant postconviction petition was filed on December 16, 2020, raising two claims for relief. First, he argued that he was denied effective assistance of appellate counsel based upon counsel's failure, after filing his petition for leave to appeal to the supreme court, to supplement that petition with case law that he contended was favorable to his retroactivity argument. Second, he argued that his 30-year sentence violated the proportionate penalties clause as applied, because 15 years of his sentence were mandatorily imposed without regard to his youth and personal characteristics. Specifically, he alleged that the trial court should have been permitted to consider petitioner's exposure to frequent heroin and crack cocaine use at home by his aunts, uncles, and biological father, who were addicted to those drugs. He asserted that he was heavily influenced by these family members and became addicted to marijuana himself. He also stated that he suffered from post-traumatic stress disorder as a result of being shot in the back at age 15, and that he hardly attended school and advanced through the grades only due to his age.

¶ 11     On January 25, 2021, the trial court summarily dismissed petitioner's postconviction petition. In doing so, the court reasoned that the issues petitioner raised in the petition had all been addressed by this court's decision on direct appeal and were therefore subject to *res judicata*. On February 24, 2021, petitioner filed a motion to reconsider the trial court's summary dismissal. On February 26, 2021, the trial court denied that motion to reconsider. This court thereafter allowed the filing of a late notice of appeal, and this appeal followed.

¶ 12                                    ANALYSIS

¶ 13     The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) is the statutory procedure by which an imprisoned individual can pursue a claim that his or her conviction or

sentence was based on a substantial denial of a constitutional right. *People v. Clark*, 2023 IL 127273, ¶ 38. It is not an appeal of the underlying judgment, but rather it is a collateral attack on that judgment. *People v. House*, 2021 IL 125124, ¶ 15. Its purpose " 'is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal.' " *Id.* (quoting *People v. Barrow*, 195 Ill. 2d 506, 519 (2001)). For that reason, the doctrine of *res judicata* applies to bar consideration of issues that were raised and decided on direct appeal, and forfeiture precludes consideration of issues that could have been raised but were not. *People v. Dorsey*, 2021 IL 123010, ¶ 31.

¶ 14   Postconviction proceedings are adjudicated in three stages. This case is at the first stage, in which the trial court independently examines the filed petition to determine whether it "is frivolous or is patently without merit" and must summarily dismiss a petition it determines to meet this standard. 725 ILCS 5/122-2.1(a)(2) (West 2020); see *People v. Brown*, 236 Ill. 2d 175, 184 (2010). Generally, a petition need only state the "gist" of a constitutional claim to avoid first-stage summary dismissal. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A petition should be summarily dismissed under this standard "only if the petition has no arguable basis either in law or in fact." *Id.* at 11-12. A petition that lacks an arguable basis in law or in fact is one "based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. This standard also encompasses claims that are barred by *res judicata* and forfeiture, as an otherwise meritorious claim has no basis in law if *res judicata* or forfeiture apply to bar it. *People v. Blair*, 215 Ill. 2d 427, 445 (2005). Our standard of review of a first-stage summary dismissal is *de novo*. *Id.* at 452.

¶ 15   Petitioner's sole argument on appeal is that his postconviction petition raised an arguable claim that the mandatory imposition of the 15-year firearm enhancement added to his 15-year sentence for armed robbery, an offense he committed at age 17, violates the proportionate penalties

clause of the Illinois constitution (Ill. Const. 1970, art. I, § 11), as applied to him. The proportionate penalties clause requires in pertinent part that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *Id.* A criminal sentence violates this provision where, among other circumstances, the penalty imposed is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002). No further definition is given of the kind of punishment that qualifies as such, because courts recognize that standards of decency and fairness which shape the community's moral sense "evolve" over time. *Id.* at 339. A court faced with such a challenge will "review the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency." *Id.* at 340.

¶ 16 Petitioner contends here that he has raised an arguable claim that the above standards are satisfied in his case because "rapidly evolving standards of moral decency concerning juvenile sentencing" have led courts to find that mandatory firearm enhancements, such as the one imposed on him, may violate the proportionate penalties clause, even where (as is the case here) a portion of the sentence was discretionary and neither an actual nor *de facto* life sentence resulted. See *People v. Aikens*, 2016 IL App (1st) 133578, ¶¶ 37-38; *People v. Barnes*, 2018 IL App (5th) 140378, ¶ 26; and *People v. Womack*, 2020 IL App (3d) 170208, ¶¶ 15-17. He argues that this evolution in the standards of moral decency is demonstrated by the legislation enacted by our General Assembly since his 2014 sentencing: (1) firearm enhancements are no longer mandatory for juvenile offenders (730 ILCS 5/5-4.5-105(b) (West 2022)), (2) transfer from juvenile court to adult court is no longer automatic or mandatory for juvenile defendants charged with the offense for which petitioner was sentenced (Pub. Act. 99-258, § 5 (eff. Jan. 1, 2016) (amending 705 ILCS

405/5-130, 5-805)), (3) all persons who were under age 21 at the time of the offense are now eligible for parole, even when convicted of first degree murder (730 ILCS 5/5-4.5-115 (West 2022)), and (4) sentencing hearings compliant with *Miller v. Alabama* are now required for all juvenile defendants, regardless of the offense (*id.* § 5-4.5-105(a)). He also contends that the new facts set forth in his petition involving his childhood marked by addiction, violence, and post-traumatic stress disorder, none of which the trial court was able to consider when sentencing him, factually support his claim that the mandatory imposition of the firearm enhancement violated the proportionate penalties clause as applied to him as a "particularly vulnerable juvenile."

¶ 17     The State argues, consistent with the ruling of the trial court, that the doctrine of *res judicata* bars petitioner's postconviction claim because, on direct appeal, he argued that the imposition of the mandatory firearm enhancement was unconstitutional under the proportionate penalties clause as applied to him, because his youth, his lack of schooling, the facts of the robbery, and his rehabilitative potential could not have been considered by the trial court. See *Ellis*, 2017 IL App (1st) 142181, ¶¶ 16-23. According to the State, petitioner's postconviction claim merely "repackages" the argument that this court considered and rejected on direct appeal.

¶ 18     Petitioner urges us to find either that *res judicata* does not apply or that fundamental fairness warrants relaxing *res judicata* to permit his claim to proceed. He argues that, although his direct appeal involved a proportionate penalties argument, his postconviction claim is that the community's standard of moral decency "evolved" since his 2014 sentencing with regard to juvenile sentencing and particularly the imposition of mandatory firearm enhancements on juveniles. He reiterates that this is his initial postconviction petition and support exists in Illinois case law for his argument, and he contends that he should not be barred from the postconviction process when the argument was not truly available to him at the time of direct appeal.

¶ 19    In postconviction proceedings, principles of fundamental fairness allow courts to relax the application of the *res judicata* effect of a prior judgment on direct appeal. *Clark*, 2023 IL 127273, ¶ 45. With respect to an initial postconviction petition, fundamental fairness generally requires a showing of cause for failure to raise the issue earlier and prejudice from the inability to do so. *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002). The General Assembly's enactment of new legislation can serve as reason to relax the bar of *res judicata*. *People v. Nichols*, 2021 IL App (2d) 190659, ¶ 22. We find that to be the case here. Arguably standards of moral decency did not evolve the moment the legislation went into effect, and thus the fact that some of the legislation petitioner relies on had become effective a few months prior to his briefs being filed does not mean that the argument was truly available to him on direct appeal. We also agree with petitioner's argument that we should apply a more lenient standard to an initial petition at the first stage than we would if we were addressing this same argument in a motion for leave to file a successive petition. We find it significant that the legislative changes at issue specifically involved the mandatory nature of imposing a firearm enhancement and the jurisdictional relationship of the juvenile court over the charge of armed robbery with a firearm, not merely that they pertained to juvenile sentencing generally. Finally, the fact that these legislative changes have led some Illinois courts to accept the proportionate penalties argument which petitioner advances here leads us to conclude that *res judicata* should not prevent petitioner from having an opportunity to advance this constitutional argument in his initial postconviction petition.

¶ 20    As stated, there are currently three published opinions supporting petitioner's argument that, due in part to the recent legislation discussed above, "the mandatory imposition of firearm enhancements for juveniles no longer reflects Illinois's evolving standard of decency." *Womack*, 2020 IL App (3d) 170208, ¶ 15; accord *Barnes*, 2018 IL App (5th) 140378, ¶¶ 25-26; *Aikens*, 2016

IL App (1st) 133578, ¶¶ 37-38. In *Aikens*, the court reached this conclusion in a direct appeal involving a 17-year-old whose 40-year sentence comprised 20 years for attempted murder plus a mandatory 20-year firearm enhancement. *Aikens*, 2016 IL App (1st) 133578, ¶ 1, 17. The court cited the defendant's age, his lack of criminal history, his troubling social history, and the fact that the crime was serious but did not involve any injury in holding that the sentencing scheme, which included the mandatory firearm enhancement, "violates the proportionate penalties clause *** as it shocks our evolving standard of moral decency." *Id.* ¶ 37. The court then cited the 2016 legislative changes discussed above and concluded that, although they did not apply retroactively, "they are indicative of a changing moral compass in our society when it comes to trying and sentencing juveniles as adults." *Id.* ¶ 38. We point out also that the court stated that it was not extending the principles of *Miller v. Alabama* as the basis for its holding under the proportionate penalties clause. *Id.* ¶ 32.

¶ 21        *Barnes* was a direct appeal involving a 17-year-old who had displayed an unloaded weapon to a gas station clerk in an armed robbery and whose 22-year sentence included a mandatory 15-year firearm enhancement. *Barnes*, 2018 IL App (5th) 140378, ¶¶ 3-4. After noting that mandatory firearm enhancements to adult sentences had been held constitutional, the court reasoned that there was a "stark difference" in how it analyzed their constitutionality when imposed on juveniles. *Id.* ¶ 20. It discussed *Aikens* and concurred with its conclusion that the sentencing scheme applied to the defendant violated the proportionate penalties clause by shocking the community's evolving standard of moral decency. *Id.* ¶ 25. It cited the defendant's age, his lack of prior criminal history, the fact that his gun was not loaded and that nobody was injured in the robbery, the fact that he expressed remorse and empathy at sentencing, and various factors involving his rehabilitative potential. *Id.* The court stated that, since the time of the defendant's sentencing, "the law has

evolved to afford the trial court discretion as to whether the enhancement should be imposed." *Id.* ¶ 26. It concluded that this, along with other legislative changes, indicated a changing moral compass in our society in trying and sentencing juveniles. *Id.* ¶ 27

¶ 22 Finally, in *Womack* the court reversed the denial of a motion for leave to file a successive postconviction petition raising this issue, where an offender who was 16 years old at the time of offense was convicted of attempted murder and sentenced to 38 years in prison, 20 years of which was pursuant to a mandatory firearm enhancement. *Womack*, 2020 IL App (3d) 170208, ¶ 1. The majority relied on *Aikens* and *Barnes* to conclude that "applying the 20-year mandatory firearm enhancement to defendant in this case violates the proportionate penalties clause," as "the juvenile status of defendant at the time of the offense and the circumstances surrounding the incident should have some relevance in determining whether to impose the mandatory 20-year firearm enhancement." *Id.* ¶ 17.

¶ 23 We note that *Womack* was issued over a strong dissent by Justice Schmidt, who reasoned in part that *Aikens* and *Barnes* had been wrongly decided. *Id.* ¶¶ 26-43 (Schmidt, J., dissenting). We note also that the reasoning of *Aikens* and *Barnes* was rejected in *People v. Woods*, 2020 IL App (1st) 163031, ¶¶ 61-63, although the court did so in the context of reviewing the denial of leave to file a successive postconviction petition.

¶ 24 After briefing concluded in this case, our supreme court issued *People v. Hilliard*, 2023 IL 128186, in which it affirmed first-stage summary dismissal where a postconviction petitioner, aged 18 at the time of offense, raised an as-applied proportionate penalties clause challenge to the mandatory 25-year firearm enhancement added to his 15-year sentence for attempted first degree murder. The petitioner relied upon *Aikens*, *Barnes*, and *Womack*, but the supreme court found those cases distinguishable on the basis that the petitioner in *Hilliard* was an adult, not a juvenile, at the

time of the offense and expressed no opinion on the merits of those cases. *Hillard*, 2023 IL 128186, ¶ 35 n.4. The petitioner there also cited the legislative changes making firearm enhancements discretionary as to juveniles and allowing parole review for offenders under age 21, arguing that these "demonstrate that society no longer deems it acceptable to mandate the enhanced penalty in every case involving a youthful offender." *Id.* ¶ 36. The supreme court rejected the argument that the cited legislative changes supported the petitioner's as-applied challenge, finding it pertinent that "the legislature made a deliberate choice not to extend this discretion to sentences for individuals who were adults at the time of their offenses." *Id.* ¶ 38. It reasoned that the "distinction between a juvenile and an adult remains significant" for purposes of sentencing. *Id.* ¶ 39.

¶ 25    Because petitioner was 17 years old and therefore a juvenile at the time of offense, we do not interpret *Hillard* as foreclosing his as-applied challenge under the proportionate penalties clause. In light of this, as well as the fact that *Aikens*, *Barnes*, and *Womack* support his argument, we cannot conclude at this first stage of postconviction proceedings that this argument is indisputably meritless. Beyond this, we express no further position on the merits of petitioner's argument. The State makes various arguments going to the merits of petitioner's constitutional claim and the facts of his case that are appropriately addressed in second-stage proceedings. The facts of petitioner's case remain important to his as-applied challenge, but we conclude that he should have the opportunity in second-stage proceedings to develop an evidentiary record to support his claim.

¶ 26                                  III. CONCLUSION

¶ 27    For the reasons set forth above, we reverse the trial court's summary dismissal of petitioner's *pro se* postconviction petition and remand this case for further proceedings under the Post-Conviction Hearing Act (725 ILCS 5/122-2.1(b) (West 2020)).

¶ 28    Reversed and remanded.

¶ 29        JUSTICE COGHLAN, dissenting:

¶ 30        Petitioner's sole argument on appeal is that "the mandatory imposition of the 15-year firearm enhancement added to his 15-year sentence for armed robbery, an offense he committed at age 17, violates the proportionate penalties clause of the Illinois constitution (Ill. Const. 1970, art. I, § 11), as applied to him." *Supra* ¶ 15. On direct appeal, this court held that "[s]tatutory amendments took effect on January 1, 2016, requiring [the] sentencing court to consider enumerated mitigating factors, *allowing the court discretion to not impose a firearm enhancement and expanding the jurisdiction of juvenile court to offenses committed before a juvenile's 18th birthday do not apply retroactively to defendant*." (Emphasis added.). *People v. Ellis*, 2017 IL App (1st) 142181-U, ¶ 1. This court also held that petitioner's "sentence did not violate the eighth amendment or the proportionate penalties clause." *Id.* ¶ 18. In this case, the majority relies on the same statutes and arguments considered on direct appeal to justify relaxing "the application of the *res judicata* effect" of its prior judgment. *Supra* ¶ 19. I respectfully disagree with the majority's decision.

¶ 31        As he did on direct appeal, petitioner specifically argues in this appeal that the mandatory nature of the firearm enhancement deprived the court of the opportunity to consider his youth and attendant circumstances in imposing sentence. *People v. Ellis*, 2017 IL App (1st) 142181-U, ¶ 16. On direct appeal, this court rejected plaintiff's argument "that the mandatory firearm enhancement is unconstitutional as applied to him *because the trial court was not able to consider his youth and rehabilitative potential* in accordance with *** the proportionate penalties clause of the Illinois Constitution." (Emphasis added.). *Supra* ¶ 7 (citing *People v. Ellis*, 2017 IL App (1st) 142181-U, ¶¶ 22-23). Relying on *Miller v. Alabama*, 567 U.S. 460, 479 (2012), petitioner argued that he deserved a "punishment that is less severe than the sentence that would be imposed on an adult

defendant" because of his educational background, the "haphazard nature of the robbery," and lack of a "violent criminal history." *Ellis*, 2017 IL App (1st) 142181-U, ¶ 21. In rejecting petitioner's constitutional argument on direct appeal, this court observed that petitioner was subject to a sentencing range of between 21 and 45 years in prison, which was not a penalty "comparable to the penalty that was rejected in *Miller*." *Id.* ¶¶ 22-23. The doctrine of *res judicata* bars reconsideration of this claim, which was "raised and decided on direct appeal." See *People v. Dorsey*, 2021 IL 123010, ¶ 31.

¶ 32    I disagree with the majority's characterization of statutes effective in 2016 as "new legislation." *Supra* ¶ 19. In addition, the "new" legislation the majority relies on here admittedly took effect "a few months prior" to the date on which petitioner filed his briefs on direct appeal. *Supra* ¶ 19. Regardless, the majority concludes that "the fact that some of the legislation petitioner relies on" became effective prior to his briefs being filed "does not mean that the argument was truly available to him on appeal." *Supra* ¶ 19. In my view, that is exactly what it means. In addition, it is illogical to conclude that an argument that was raised, argued, considered, and rejected on direct appeal was not "truly available to [petitioner] on direct appeal." *Supra* ¶ 19.

¶ 33    Petitioner argues that, although section 5-4.5-105 does not apply to him, it is "evidence of our society's changing standards of moral decency." This court rejected a similar claim in *People v. Woods*, 2020 IL App (1st) 163031. In *Woods*, the trial court denied defendant leave to file a successive postconviction petition in which he argued, *inter alia*, that the mandatory 25-year firearm enhancement was an unconstitutional violation of the proportionate penalties clause, as applied. *Id.* ¶ 54. The defendant argued that the legislative enactment of 730 ILCS 5/5-4.5-105(b) was indicative of evolving standards of moral decency. *Id.* ¶ 61. In rejecting defendant's claim, another panel of this court held that "there is no indication the General Assembly found that

application of mandatory firearm enhancements to juvenile defendants shocked our sense of moral decency." *Id.* ¶ 62. The court explained that "[t]he new provision did not completely eliminate application of the mandatory firearm enhancements to juvenile defendants, nor did it make the provision retroactive," reflecting a clear belief on the part of the legislature that "for juvenile defendants, mandatory firearm enhancements were appropriate in certain circumstances."

¶ 34    Significantly, in *People v. Hilliard*, 2023 IL 128186, our supreme court recently rejected a similar argument that the legislature's change to a statute permitting parole review after 10 years for certain individuals under 21 at the time of their offense (730 ILCS 5/5-4.5-115 (West 2022)) supported an as-applied proportionate penalties claim because it demonstrated "an evolving standard of decency." *Id.* ¶¶ 36, 38, 39. The court found that the legislature's deliberate choice not to make the statutory provision retroactive and broaden the statute's reach to all defendants under 21 "shows that it was implementing the legislation as a policy change rather than a reflection that the previous statutory scheme was abhorrent to the community's moral sense." *Id.* ¶¶ 38-39.

¶ 35    The majority dismisses *Woods* because it was decided "in the context of reviewing the denial of leave to file a successive postconviction petition." *Supra* ¶ 23. However, the majority concedes that, "[w]ith respect to an initial postconviction petition," relaxing *res judicata* for fundamental fairness "generally requires a showing of *cause* for failure to raise the issue earlier and *prejudice* from the inability to do so." (Emphasis added.). *Supra* ¶ 19 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002)). Since this is the same standard used when considering a successive postconviction petition, this is a distinction without a difference. See *Woods*, 2020 IL App (1st) 163031, ¶ 39 ("In considering a successive petition, the circuit court determines whether it (1) states a colorable claim of actual innocence or (2) establishes *cause and prejudice*." (Emphasis added.)). The fact that petitioner in this case is unable to establish cause is fatal to his

claim.

¶ 36    The majority also relies on "three published opinions supporting petitioner's argument." *Supra* ¶ 20 (citing *People v. Womack*, 2020 IL App (3d) 170208, *People v. Barnes*, 2018 IL App (5th) 140378, and *People v. Aikens*, 2016 IL App (1st) 133578). Notably, Justice Schmidt dissented in *Womack*, finding that *Aikens* and *Barnes* "were wrongly decided" and "fail to provide cause." *Womack*, 2020 IL App (3d) 170208, ¶¶ 26-43 (Schmidt, J., dissenting). See also *People v. Hilliard*, 2021 IL App (1st) 200112, ¶¶ 34-35, 46-47 (declining to follow *Aikens, Barnes*, and *Womack* because, *inter alia*, the courts did not consider that the defendants' sentences were not *de facto* life sentences) *aff'd on other grounds*, *Hilliard*, 2023 IL 128186; *People v. Nichols*, 2021 IL App (2d) 190659, ¶ 25 (finding *Barnes* and *Womack* "questionable" in light of *Buffer*).

¶ 37    Similarly, as this court recently observed in *People v. Valencia*, 2023 IL App (1st) 210583-U (cited as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)):

>    "[B]oth *Aikens* and *Barnes* predate our supreme court's decision in *Buffer* that a *de facto* life sentence for a juvenile is more than 40 years (2019 IL 122327, ¶ 41). The *Miller* protections are only applicable where a defendant has received a natural or *de facto* life sentence, which is not the case here. See *People v. Hilliard*, 2021 IL App (1st) 200112, ("it is clear from our supreme court precedent that *Miller* is only appliable [*sic*] where a defendant has received a natural or *de facto* life sentence.")." *Id.* ¶ 52.

¶ 38    Finally, at the first stage of postconviction proceedings "we take as true all well-pleaded factual allegations in the petition and supporting documents *unless they are positively rebutted by the record*." (Emphasis added). *People v. Sanders*, 2016 IL 118123, ¶ 48. The record in this case positively rebuts petitioner's claim that the trial court was unable to consider his "particular immaturity" in imposing his sentence. On direct appeal, this court acknowledged that the trial court

considered petitioner's age, "family ties," "lack of a violent criminal history" as an adult, juvenile record that included burglary, stalking, and robbery, the seriousness of the offense in this case, and petitioner's lack of remorse in imposing sentence. *Ellis*, 2017 IL App (1st) 142181-U, ¶¶ 25-27, 30-31.

¶ 39 On direct appeal, this court also acknowledged that "[d]efendant's 30-year term sits within the lower half" of the 21 to 45 year sentencing range (*Id.* ¶ 29); his sentence did not violate the proportionate penalties clause (*Id.* ¶ 18); "[t]his court has held that a prison term in this range does not violate the eighth amendment or the proportionate penalties clause and has declined to extend the rules set out in *Miller* and *Graham* [*v. Florida*, 560 U.S. 48 (2010)] to mandatory minimum sentences applied to juveniles" (*Id.* ¶ 23); statutory amendments allowing the court discretion to not impose a firearm enhancement committed by a juvenile "appl[y] only prospectively and [do] not apply retroactively to defendant's case" (*Id.* ¶ 15); and that "[e]ven if the amendments" to the Juvenile Court Act that excluded from its jurisdiction 17-year-olds charged with committing felonies "were applied to defendant's case, they would not confer juvenile court jurisdiction on this defendant" because "the amendment applies only to offenders who commit the charged crimes on or after January 1, 2014" (*Id.* ¶¶ 38-39).

¶ 40 The record clearly establishes that all of petitioner's claims are barred by the doctrine of *res judicata*. In *People v. Clark*, 2023 IL 127273, our supreme court held that "in proceedings under the Postconviction Act, fundamental fairness for relaxing the doctrine is established by satisfying the requirements of the cause-and-prejudice test." *Id.* ¶ 43. (citing *People v. Simpson*, 204 Ill. 2d 536, 560 (2001) (principles of fundamental fairness will not be applied to relax the *res judicata* doctrine where the defendant fails to meet the requirements of the cause-and-prejudice test)). Based on petitioner's failure to establish cause and prejudice, principles of fundamental fairness

should not be applied to relax the *res judicata* doctrine in this postconviction proceeding.

¶ 41        For the reasons stated herein, I would affirm the trial court's dismissal of petitioner's postconviction petition.